533 A.2d 120

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Edward S. KYLE, Sr., Appellant.**

Superior Court of Pennsylvania.

Argued June 11, 1987.

Filed Oct. 20, 1987.

Petition for Allowance of Appeal Denied April 5, 1988.

486

488

William J. Miele, Assistant Public Defender, Williamsport, for appellant.

Kenneth Osokow, Assistant District Attorney, Williamsport, for Com., appellee.

Before CIRILLO, President Judge, and OLSZEWSKI and HESTER, JJ.

OLSZEWSKI, Judge:

This is a direct appeal from a judgment of sentence imposed following appellant's conviction by a jury. The trial and conviction stemmed from an attack on the female proprietor of a sewing goods store. As the victim was working alone in the shop, an assailant entered the store and, forcing her at knife point to enter the storeroom, he bound her with rope. The victim was then physically and sexually assaulted. Appellant was subsequently arrested and charged with numerous offenses arising from the at-

tack.  After a three-day trial, he was found guilty of rape, robbery, indecent assault, involuntary deviate sexual intercourse, and other related offenses.  Post-verdict motions were filed and denied, and sentence imposed.  Appellant now raises five claims of trial error for our review.  Finding no merit to any of these claims, we affirm the judgment of sentence.

## I.

At trial, appellant testified on his own behalf, presenting an alibi defense.  Following his testimony, the Commonwealth read into evidence a stipulation as to his prior convictions for robbery, burglary, and theft.  By introducing such evidence, the Commonwealth intended to cast doubt on appellant's credibility.  Appellant first contends the court erred in permitting the Commonwealth to use his prior convictions for impeachment purposes.

■  In determining the admissibility of prior convictions, our courts have relied upon the rules of *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973), and *Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978).  Our Supreme Court has, however, recently modified the rules of *Bighum* and *Roots*.  In *Commonwealth v. Randall*, 515 Pa. 410, 528 A.2d 1326 (1987), the Court noted that those cases have proven to be less than effective in guiding the courts and the litigants as to the admissibility of prior conviction evidence.  Consequently, the Supreme Court determined that the relevant Federal Rule of Evidence, Fed.R. Evid. 609(a)(1), (2), offered more concrete guidelines for the admission of prior convictions.  Borrowing from the language of the federal rule, the Court held:

> [W]hile we do not adopt the federal rule *per se* we do modify our current rule to the following extent: evidence of prior convictions can be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statement, and the date of conviction or the last day of confinement is within ten years of the trial date.  If a

period greater than ten years has expired the presiding judge must determine whether the value of the evidence substantially outweighs its prejudicial effect.

*Randall,* 515 Pa. at 415, 528 A.2d at 1328–1329.

Under the rule announced in *Randall,* appellant's prior convictions were admissible as impeachment evidence. Each of the convictions in question—robbery, burglary, and theft—reflect on appellant's veracity. *See Randall,* 515 Pa. 410, 528 A.2d 1326 (burglary); *Commonwealth v. Henderson,* 497 Pa. 23, 35, 438 A.2d 951, 957 (1981) (theft and robbery). None of the prior convictions occurred more than ten years before appellant's trial date (March 12, 1986) since appellant was convicted of theft and burglary in 1977 and of robbery in 1985. Consequently, the court properly permitted the Commonwealth to introduce the prior convictions into evidence.

## II.

Appellant's second claim of error raises a difficult question regarding privileged communications between psychologist and client. Subsequent to the attack, the victim received counseling from Dr. John Kelsey, a licensed clinical psychologist. In an effort to determine the substance of any statements made by the victim and to prepare a defense strategy, defense counsel made pre-trial requests to inspect Dr. Kelsey's file or, in the alternative, to permit an in-camera review of the file. The trial court determined that Dr. Kelsey's records were privileged communications pursuant to 42 Pa.C.S.A. § 5944[1] and, consequently, denied the de-

---

1. Section 5944 provides:

    **§ 5944. Confidential communications to licensed psychologists**
    No person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52),[1] to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.
    [1] 63 P.S. § 1201 et seq.
    42 Pa.C.S.A. § 5944 (Purdon 1982) (footnote in original).

fense requests. Appellant maintains that the failure to disclose the contents of the file denied him the rights guaranteed by the Confrontation Clause of the Sixth Amendment of the United States Constitution.

### A.

■ The confrontation clause guarantees an accused the right "to be confronted with the witness against him; [and] to have compulsory process for obtaining witnesses in his favor." U.S. Const. Amend. VI.[2] In essence, that clause protects two rights: the right to confront one's accusers and the right to cross-examine witnesses. *Delaware v. Fensterer,* 474 U.S. 15, 18, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (per curiam). Nothing in the record indicates that appellant was denied the right to physically confront his accusers; appellant was neither excluded from the trial nor deprived of the right to confront the declarant of a hearsay statement. *See Id. See also Pennsylvania v. Ritchie,* — U.S. —, —, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987) (defining scope of the right). Rather, appellant's claim that he was denied access to arguably useful information raises a question regarding appellant's sixth amendment right to the cross-examination of the witness. *See Ritchie,* — U.S. at —, 107 S.Ct. at 998.

■ The Supreme Court of the United States has only recently examined the applicability of the sixth amendment to a situation where access to information is precluded pursuant to a statutory privilege. In *Pennsylvania v. Ritchie, supra,* the defendant was charged with various sex offenses arising out of an assault on his minor daughter. Following the assault, the matter was referred to the Children and Youth Services (CYS), a protective service agency which investigates such cases. Ritchie sought pre-trial access to the CYS file in order to develop a defense strategy. CYS refused to comply with Ritchie's request, claiming

---

**2.** The Confrontation Clause is made applicable to the states by the Fourteenth Amendment of the United States Constitution. *Pointer v. Texas,* 380 U.S. 400, 403–406, 85 S.Ct. 1065, 1067–1069, 13 L.Ed.2d 923 (1965).

the records were confidential communications pursuant to the statutory privilege provided by 11 Pa.S.A. § 2215.[3] The trial judge refused to order disclosure. On appeal, the Superior Court and the Supreme Court disagreed, finding that the trial court's order denying access pursuant to Section 2214 violated the accused's rights guaranteed by the confrontation clause. *Ritchie*, —— U.S. at ——, 107 S.Ct. at 995–996.

The United States Supreme Court disagreed with our appellate courts. Speaking for a plurality of the Court, Justice Powell made clear that the confrontation clause of the sixth amendment was a trial right, not a "constitutionally compelled rule of pretrial discovery." *Ritchie*, —— U.S. at ——, 107 S.Ct. at 999. "In short, the Confrontation Clause only guarantees 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Ritchie*, —— U.S. at ——, 107 S.Ct. at 999 (emphasis in original), *quoting, Delaware v. Fensterer*, 474 U.S. at 19, 106 S.Ct. at 295. Given that defense counsel was able to fully cross-examine the victim, withholding the CYS file did not deny Ritchie his right to cross-examination. *Ritchie*, —— U.S. at ——, 107 S.Ct. at 1000.

We recognize that the confrontation clause analysis in *Ritchie* commanded only a plurality of the Court. Though, regrettably, the Court could not issue a majority opinion for our guidance on this important issue, we consider the analysis of the plurality principled and persuasive. It is this Court's opinion, then, that the right to cross-examine wit-

---

**3.** The relevant portion of Section 2215 provides:

    (a) Except as provided in section 14 [11 Pa.C.S.A. § 2214 (Purdon Supp.1987)], reports made pursuant to this act including but not limited to report summaries of child abuse ... and written reports ... as well as any other information obtained, reports written or photographs or x-rays taken concerning alleged instances of child abuse in the possession of the department, a county children and youth social service agency or a child protective service shall be confidential and shall only be made available to:

    .    .    .    .    .

    (5) A court of competent jurisdiction pursuant to a court order.
11 Pa.S.A. § 2215(a)(5) (Purdon Supp.1987).

nesses is a trial right which, consequently, does not require the pre-trial disclosure of any information which may be useful in preparing for trial or in attacking trial testimony.[4]

Applying this rule to the case at hand, appellant's right of cross-examination was not violated by the denial of access to the psychologist's file. The principal witness for the Commonwealth was the eyewitness to the assault, the victim. As in *Ritchie*, appellant's trial counsel was not prevented from conducting cross-examination of that, or of any other, trial witness. Indeed, a review of the transcript reveals that during the cross-examination of the victim, defense counsel was able to call into question the witness's memory and perception of the assault. Given that defense counsel employed the opportunity to fully cross-examine the trial testimony, particularly that of the victim, appellant was not denied his right to cross-examination as guaranteed by the sixth amendment.

## B.

### 1.

This is not to say, however, that a preclusion of a defendant's access to pre-trial information is immune from constitutional review. A majority of the Supreme Court in *Ritchie* made clear that where an accused raises a claim based upon the inability to obtain pre-trial information, the Due Process Clause of the Fourteenth Amendment provides the proper framework for analysis. *Ritchie*, —— U.S. at ——, 107 S.Ct. at 1001. Specifically, the Court referred to the due process protection afforded an accused to obtain "material" evidence in the possession of the Commonwealth. *Id.*, *citing, Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). In *Ritchie*, however, the Supreme Court was unable to determine the materiality of the CYS file because it had not been reviewed by the

---

**4.** Under circumstances similar to those in *Ritchie*, this Court has concluded that the plurality decision in *Ritchie* is controlling. *See Commonwealth v. Lloyd*, 367 Pa.Super. 139, 146, 532 A.2d 828, 831–832 (1987).

defendant, the Commonwealth, or the trial court. *Ritchie*, — U.S. at —, 107 S.Ct. at 1002. More importantly for our purposes, the Supreme Court reasoned that the qualified statutory privilege of § 2215 did not prevent the trial court from determining whether the information in the file was material evidence under *Brady*. *Id.*

Although our disposition of this matter would be controlled by the due process analysis referred by the majority in *Ritchie*, it is at this point that we diverge from that case. Unlike the statutory conditional privilege at issue in *Ritchie*, the Pennsylvania law in this case grants an absolute privilege for communications between a licensed psychologist and a client. We are, therefore, presented with a situation where the interests of the accused in learning of favorable witnesses as well as obtaining arguably useful information directly conflicts with society's interest in maintaining confidentiality between a psychologist and a client.[5] Although we are without clear guidelines as to the means of accommodating these interests, the *Ritchie* decision teaches that the rights of an accused are not without limitations. In *Ritchie*, the Court noted that the public interest in protecting the CYS file was "strong." Because the statutory conditional privilege did not preclude all use of such information, however, the Court concluded that any material information in the file could be disclosed. *Ritchie*, — U.S. at —, 107 S.Ct. at 1002. Based upon this reasoning, we conclude that a compelling public interest would justify the total non-disclosure of information. We must, therefore, determine whether a compelling public interest supports the psychologist-client privilege provided in Section 5944.

### 2.

In enacting Section 5944, the legislature made no exceptions for disclosure. Indeed, the legislative intent as stated in Section 5944 could not be clearer: the privilege estab-

---

5. There is no question here that Dr. Kelsey is a licensed psychologist and that the information in his file was obtained through counseling and treatment of victim.

lished is the embodiment of a strong public policy favoring an absolute privilege from disclosure.[6] That such a result was intended is supported by the language of Section 5944 which expressly provides that the psychologist-client privilege is modeled after the attorney-client privilege, an absolute privilege which has been repeatedly sustained under constitutional attack. *See Commonwealth v. Sims,* 513 Pa. 366, 373, 521 A.2d 391, 395 (1987) (sixth amendment right of confrontation did not abrogate attorney-client privilege); *citing Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *Commonwealth v. Allen,* 501 Pa. 525, 462 A.2d 624 (1983) (same). *See also In re Search Warrant B-21778,* 513 Pa. 429, 521 A.2d 422, 428 (1987) (noting the "time honored" attorney-client privilege). Like the attorney-client privilege, the psychologist-client privilege protects an interest extrinsic from the truth-finding process. The rationale for the psychologist-client privilege was cogently stated in an Advisory Committee Note to Proposed Federal Rule of Evidence 504:[7]

> Among physicians, the psychiatrist has a special need to maintain confidentiality. His capacity to help his patients is completely dependent upon their willingness and ability to talk freely. This makes it difficult if not impossible for him to function without being able to assure his

**6.** The need for such a privilege is widely recognized. *see e.g., Ex Parte Rudder,* 507 So.2d 411, 413 (Ala.1987); *Bond v. District Court of the County of Denver,* 682 P.2d 33, 38 (Colo.1984); *State v. Miller,* 300 Or. 203, 709 P.2d 225, 232 (1985); *State ex rel. Juvenile Dept. of Clatsop County v. Martin,* 271 Or. 603, 606 nn. 2, 3, 533 P.2d 780, 781 nn. 2, 3 (1975). *See also* Knapp, VandeCreek and Zirkel, *Privileged Communications for Psychotherapists in Pennsylvania: A Time for Statutory Reform,* 60 Temp.L.Q. 267, 268–274 (1987); Developments in the Law—Privileged Communications, 98 Harv.L.Rev. 1450, 1512–1548 (1985); Slovenko, *Psychiatry and a Second Look at the Medical Privilege,* 6 Wayne L.Rev. 175 (1960).

**7.** Proposed Fed.R.Evid. 504 would have established a psychologist-patient privilege. Although approved by the Supreme Court, Congress instead adopted a more broadly worded version, *e.g.,* Fed.R.Evid. 501. The failure of Congress to accept proposed Rule 504 does not detract from the value or importance of the privilege. To the contrary, it was determined that the courts were best able to develop rules regarding privileges. *See Trammel v. United States,* 445 U.S. 40, 48, 100 S.Ct. 906, 911, 63 L.Ed.2d 186 (1980).

patients of confidentiality and, indeed, privileged communication. Where there may be exceptions to this general rule ..., there is wide agreement that confidentiality is a *sine qua non* for successful psychiatric treatment. The relationship may well be likened to that of the priest-penitent or the lawyer-client. Psychiatrists not only explore the very depths of their patients' conscious, but their unconscious feelings and attitudes as well. Therapeutic effectiveness necessitates going beyond a patient's awareness and, in order to do this, it must be possible to communicate freely. A threat to secrecy blocks successful treatment.

Report No. 45, Group for the Advancement of Psychiatry 92 (1960), *quoted in* Advisory Committee's Notes to Proposed Rules, 56 F.R.D. at 242. Similarly, the District of Columbia Circuit Court explained in an oft-quoted statement:

The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame. Most patients who undergo psychotherapy know that this is what will be expected of them, and that they cannot get help except on that condition. * * * It would be too much to expect them to do so if they knew that all they say—and all that the psychiatrist learns from what they say—may be revealed to the whole world from a witness stand.

*Taylor v. United States*, 222 F.2d 398, 401 (D.C.Cir.1955), *quoting*, Guttmacher and Weihofen, *Psychiatry and the Law* 272 (1952). *See Commonwealth ex rel. Platt v. Platt*, 266 Pa.Super. 276, 304, 404 A.2d 410, 425 (1979) (Spaeth, J., concurring and dissenting) ("General agreement exists in the legal and medical worlds that confidentiality of communications between patients and therapists is the *sine qua non* of successful psychiatric treatment.").

As these comments indicate, patient confidence is essential for effective treatment. Because the information revealed by the patient is extremely personal, the threat of

disclosure to outsiders may cause the patient to hesitate or even refrain from seeking treatment. The privilege thus serves the public interest in promoting a society in which the general well-being of the citizenry is protected.[8] We find that this public interest is especially compelling where, as here, the victim of a crime has sought post-assault treatment knowing that her testimony would be a necessary part of the prosecution's case. Indeed, the fact that the legislature determined confidential information was inadmissible as evidence under the statutory privilege demonstrates a recognition of this public policy consideration. *See* 81 Am.Jr.2d *Witness* § 231 (1976). *See generally* Annot. 44 A.L.R.3d 24 *Privilege in Judicial and Quasi–Judicial Proceedings Arising from Relationships Between Psychiatrist or Psychologist and Patient* (1972). In doing so, the Commonwealth—like virtually every other state[9]—effectuated a means whereby the goal of effective treatment would not be impaired.

The statutory privilege for psychologists and clients also serves to protect another interest as well: the privacy interest of the client. Given the extremely personal nature of the information passed and the confidential relationship in which the information was shared, compelled disclosure in court would make public the client's innermost thoughts. This privacy interest is not without significance. Indeed, it has been suggested that the privacy interest of the client may have constitutional underpinnings.[10] In *In re B.*, 482

8. It has been suggested that the inability of a state's citizens to obtain treatment of this type may preclude or impair them from exercising their fundamental freedoms. *In re: Zuniga,* 714 F.2d 632, 639 (6th Cir.1983), *cert. denied,* 464 U.S. 983, 104 S.Ct. 426, 78 L.Ed.2d 361 (1983).

9. Statutory protection for psychotherapist-patient communications exists in 49 states. *See also* Knapp, VandeCreek and Zirkel, *Privileged Communications for Psychotherapists in Pennsylvania: A Time for Statutory Reform,* 60 Temp.L.Q. 267, 275 (1987).

10. Other courts and commentators have recognized that the privacy interest of a patient seeking treatment is of constitutional dimension. *See e.g., Caesar v. Mountanos,* 542 F.2d 1064, 1064, 1067–1068 (9th Cir.1976), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804 (1977); *Hawaii Psychiatric Soc. District Branch of American Psychiat-*

Pa. 471, 394 A.2d 419 (1978), a plurality of the Pennsylvania Supreme Court concluded that a client's interest in keeping confidential psycotherapeutic communications was a constitutionally protected interest. *In re B.*, 482 Pa. at 484, 394 A.2d at 425. *See Commonwealth ex rel. Gorto v. Gorto*, 298 Pa.Super. 509, 513, 444 A.2d 1299, 1301 (1982) (in accord with *In re B.*, access to records of patient's psychiatric history was an impermissible invasion of privacy). *Cf. Fischer v. Commonwealth Department of Public Welfare*, 85 Pa.Commw. 240, 260–262, 482 A.2d 1148, 1159–1160 (1984) (declaring that the provisions of the Public Welfare Code requiring a victim of a sexual offense report the crime within a specified time period were violative of the victim's right to privacy as guaranteed by the Pennsylvania Constitution).[11] More recently, several members of our Supreme Court have acknowledged that the statutory physician-patient privilege has a constitutional basis. Writing for three members of the Court in *In re June 1979 Allegheny County Investigating Grand Jury*, 490 Pa. 143, 415 A.2d 73 (1980), Chief Justice Eagen stated:

> Based on Mr. Justice Manderino's opinion in *In re B.*, *supra*, [appellant] asserts the physician-patient privilege is broader than the statutory provision, being rooted in the right to privacy guaranteed by both the United States Constitution and the Pennsylvania Constitution. While its sources and limits may be disputed, there can be no doubt that the United States Constitution guarantees a right to privacy. *See Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Stanley v. Georgia*, 394 U.S.

*ric Assoc. v. Ariyoshi*, 481 F.Supp. 1028, 1045 (D.Hawaii 1979); *Robinson v. Magovern*, 83 F.R.D. 79, 90 n. 2, 91 (W.D.Pa.1979); *Taylor v. United States*, 222 F.2d 398, 401 (D.C.Cir.1955); *In re Lifschutz*, 2 Cal.3d 415, 431–432, 467 P.2d 557, 567, 85 Cal.Rptr. 829, 839 (1970). *But see State ex rel. Pflaum v. State of Wisconsin Psychology Examining Bd.*, 111 Wis.2d 643, 331 N.W.2d 614, 616 (1983) (right to privacy limited to fundamental rights).

**11.** The decision of the Commonwealth Court was affirmed. *Fischer v. Commonwealth Department of Public Welfare*, 85 Pa.Commw. 240, 482 A.2d 1148 (1984), *aff'd*, 509 Pa. 293, 502 A.2d 114 (1985). The Commonwealth did not, however, appeal the issue regarding the reporting requirement.

557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Cases concerned with the constitutional protection of privacy "have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1976) (footnotes omitted).

Clearly, the privacy interest of the patients which is implicated under the instant set of facts is the interest in avoiding disclosure of personal matters. This privacy interest finds explicit protection in the Pennsylvania Constitution., Art. 1, § 1, which provides, in pertinent part: "All men ... have certain inherent and indefeasible rights, among which are those ... of acquiring, possessing, and protecting property and reputation...." Disclosure of confidences made by a patient to a physician, or even of medical data concerning the individual patient could, under certain circumstances, pose such a serious threat to a patient's right not to have personal matters revealed that it would be impermissible under either the United States Constitution or the Pennsylvania Constitution.

*Id.*, 490 Pa. at 149–151, 415 A.2d at 77–78 (Eagen, C.J., joined by O'Brien and Kauffman, JJ.) (footnotes omitted). Nonetheless, under the facts of that case, the members of the Court found no constitutional violation.[12] *Id.* 490 Pa. at 151, 415 A.2d at 78. Both dissenters, Justice Larsen and Justice Flaherty agreed, however, that the privacy interest at issue was constitutionally protected. *Id.*, 490 Pa. at 153–155, 415 A.2d at 79–80 (Larsen, J., and Flaherty, J., dissenting). *See In the Matter of Pittsburgh Action Against Rape*, 494 Pa. 15, 428 A.2d 126 (1981) (three members of the Court—Chief Justice O'Brien, Justice Flah-

---

**12.** Justice Roberts and present Chief Justice Nix concurred in the disposition of the case.

erty, and Justice Larsen—would find that a constitutionally protected right to privacy forms the basis of a counselor-patient privilege).

We have no doubt that the public interest in protecting a client's privacy interest under such circumstances is particularly important. Whether or not that privacy interest is constitutionally protected, it is still desirable as a matter of social policy to recognize and protect this interest as it is reflected in the statutory psychologist-client privilege.

It is, thus, beyond question that the public interest is served by encouraging clients to seek treatment. The privilege afforded by § 5944 was intended to inspire confidence in the client and to encourage full disclosure to the psychologist. By preventing the latter from making public any information which would result in humiliation, embarrassment or disgrace to the client, the privilege is designed to promote effective treatment and to insulate the client's private thoughts from public disclosure.

The issue to be decided, however, is whether the public interests supporting the psychologist-client privilege outweigh an accused's interest in reviewing arguably useful information protected by the privilege. Our research reveals few cases in which this issue was addressed. In *People v. District Court of Denver*, 719 P.2d 722 (Colo. 1986), the statutory privilege was, as here, designed to protect confidential communications between a psychologist and a patient. Acting upon an objection to the production of the victim's treatment records, the trial court found the privilege applicable but held that the accused's constitutional right to confrontation outweighed the statutory privilege. *Id.* at 724. The trial court then ordered an *in camera* review of the records to determine what relevant information could be released. On appeal to the Supreme Court of Colorado, that Court reviewed the relevant case law, noting that the defendant's constitutional rights to confront and cross-examine adverse witnesses was not absolute. *Id.* at 726. In reversing the order of the trial court, the Court stated:

There is a strong public policy interest in encouraging victims of sexual assaults to obtain meaningful psychotherapy. The defendant's constitutional right to confrontation is not so pervasive as to to [sic] place sexual assault victims in the untenable position of requiring them to choose whether to testify against an assailant or retain the statutory right of confidentiality in post-assault psychotherapy records. Accordingly, we conclude that where, as here, the victim has not waived the privilege afforded her ..., the defendant is not entitled to examine the victim's post-assault psychotherapy records or to have the trial court review such records *in camera* on the basis that the records might possibly reveal statements of fact that differ from the anticipated testimony of the victim at trial.

*Id.* at 727. The reasoning used by the Supreme Court of Colorado in *District Court* has been adopted by an appellate court of Illinois. *See People v. Foggy*, 149 Ill.App.3d 599, 102 Ill.Dec. 925, 500 N.E.2d 1026 (1986) (defendant's constitutional right of confrontation must yield to absolute privilege between rape counselor-victim).

Other courts have held that the statutory privilege must yield under such circumstances. The decision by the Supreme Court of Connecticut in *State v. Whitaker*, 202 Conn. 259, 520 A.2d 1018 (1987), illustrates this approach:

The crux of the defendant's argument on appeal is that his right to search for truth in defending himself should supersede the interest of the rape crisis service and the victim in maintaining confidentiality. We addressed this very issue in *In re Robert H.*, 199 Conn. 693, 509 A.2d 475 (1986), which was published subsequent to the trial court's ruling on the present motion to quash. In that case, we particularized a procedure, developed in our prior decisions; *see State v. Bruno*, 197 Conn. 326, 497 A.2d 758 (1985); *State v. Esposito, supra* [192 Conn. 166, 471 A.2d 949 (1984) ]; which protects a victim's statutory right to confidentiality while simultaneously safeguarding a defendant's constitutional right effectively to cross-ex-

amine the victim. *In re Robert H., supra,* 199 Conn. at 708–709, 509 A.2d 475. Under that procedure, a claim of privilege may be countered by a showing that " 'there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken.' " *Id.,* at 708, 509 A.2d 475. If such a showing is made and the consent of the witness is secured, the court may conduct an *in camera* inspection of the information.

. . . . .

This inspection, in the context of the sexual assault counselor privilege, is not limited to merely "relevant material." The court may also look for "any inconsistent and relevant statements of the victim in the records when compared with the victim's direct examination." *Id.* at 709, 509 A.2d 475. In the event the inspection does not reveal such material, the record shall be sealed and made available for appellate review. If the court finds relevant material, however, the witness must choose between consenting to the release of the material or having her testimony stricken. *See Id.* at 708–10, 509 A.2d 475; *State v. Bruno, supra,* 197 Conn. at 329, 497 A.2d 758; *State v. Esposito, supra,* 192 Conn. at 179–80, 471 A.2d 949.

*State v. Whitaker,* 202 Conn. at 271–272, 520 A.2d at 1025. *See Bobo v. State,* 256 Ga. 357, 349 S.E.2d 690 (1986) (upon a showing of necessity, the accused may gain access to privileged information); *State v. McBride,* 213 N.J.Super. 255, 270, 517 A.2d 152, 159 (1986) (although psychologist-patient privilege was co-extensive with attorney-client privilege, it may be defeated in the interest of fairness); *State v. Farrow,* 116 N.H. 731, 366 A.2d 1177 (1976) (defendant's right to confrontation required limited use of information protected by doctor/psychologist-patient privilege).

■ Having reviewed the language of the statutory privilege enacted by our legislature and having given consideration to the public policies underlying the absolute privilege

as well as the relevant cases in this and other jurisdictions, we find that the interests protected by the privilege are substantial. We are, of course, cognizant of the heavy weight afforded to appellant's interest in disclosure of the victim's file. Nonetheless, in weighing the public interests protected by shielding the file with those advanced by disclosure, we conclude that the balance tips in favor of non-disclosure. Nor do we believe that our decision today will unduly infringe on the rights of the accused. First, we note that as a matter of constitutional law, our courts have upheld testimonial privileges which bar a criminal defendant from obtaining or using confidential communications. *See Washington v. Texas*, 388 U.S. 14, 23 n. 21, 87 S.Ct. 1920, 1925 n. 21, 18 L.Ed.2d 1019 (1967); *Commonwealth v. Sims*, 513 Pa. 366, 521 A.2d 391, 395 (1987). Here, the privilege only limits access to statements made during the course of treatment by the psychologist. It does not foreclose all lines of defense questioning. Likewise, the privilege does not unfairly place the defense in a disadvantageous position; like the defense, the prosecution does not have access to the confidential file and, thus, cannot use the information to make its case.

Appellant argues, however, that precluding defense access to the victim's files would conflict with the decisions of our appellate courts in *In the Matter of Pittsburgh Action Against Rape*, 494 Pa. 15, 428 A.2d 126 (1981) (*PAAR*), and *Adoption of Embrick*, 351 Pa.Super. 491, 506 A.2d 455 (1986), *app. denied*, 513 Pa. 634, 520 A.2d 1385 (1987). We find that those cases are not inapposite.

In *PAAR* the Pennsylvania Supreme Court declined to expand a common law privilege to include communications between a rape crisis counselor and a victim.[13] The *PAAR* Court was unpersuaded by the argument that no functional distinction existed between a psychotherapist and client

13. In response to the decision in *PAAR,* the Pennsylvania legislature enacted a statute providing for an absolute privilege for communications made to a rape crisis counselor, *i.e.,* 42 Pa.C.S.A. § 5945.1. *See Commonwealth v. Samuels* 354 Pa.Super. 128, 139, 511 A.2d 221, 227 (1986).

relationship (which was legally protected), and the relationship involving PAAR personnel and the rape victim. *PAAR*, 494 Pa. at 24 n. 2, 428 A.2d at 130 n. 2. Consequently, the Court determined that the absolute privilege for psychotherapist-patient communications did not apply. *Id.* In the present case, the confidential relationship between Dr. Kelsey and the victim is, beyond question, within the scope of protection afforded to psychologist and patient.

Appellant's reliance on *Embrick* is also misplaced. In that case, a psychologist was permitted to testify at a parental termination hearing even though she had examined the child and both parents. On appeal, the minor's parents claimed the testimony was admitted in violation of the psychologist-client privilege established by 42 Pa.C.S.A. § 5944. For several reasons, this Court refused to recognize the privilege. First, since the parents were examined by the psychologist at the request of the Children and Youth Agency and not because they sought counseling or treatment, they were not "clients" within the scope of the privilege. Second, the parents knew that the psychologist would make a report to the Agency or to the court, and thus, could have had no expectations that the communications were confidential. Third, the nature of a parental termination hearing required that the court conduct a full and comprehensive hearing and render a decision after having taken into consideration all evidentiary resources. Fourth, even if a psychologist-client relationship existed, the public interest in reaching a correct decision regarding termination of parental rights outweighed the injury to the confidential relationship. *Embrick*, 351 Pa.Super. at 499–501, 506 A.2d at 460–461. Consequently, this Court upheld the decision to permit the psychologist to testify. *Embrick*, 351 Pa.Super. at 503, 506 A.2d at 462.

The rationale of the *Embrick* Court renders that case easily distinguishable from the one at hand. Here, because the victim sought psychological counseling treatment subsequent to the assault and solely for the purpose of treatment, she was a "client" within the meaning of the statu-

tory privilege. In addition, the relationship between the psychologist and the victim was initiated and continued in an aura of confidentiality. Further, the victim's mental condition was not at issue in the case and was irrelevant to the determination. Finally, unlike *Embrick* where the public interests weighed against the invocation of the privilege, public policy considerations favor nondisclosure in this case.[14]

■ Finally, appellant argues that without even an *in camera* inspection of the file by the court, it cannot be determined whether any statements made by the victim would be helpful to the defense. We decline to compromise what we have determined is an absolute privilege from disclosure. As we noted above, the purpose of the psychologist-client privilege is to aid in the effective treatment of the client by encouraging the patient to disclose information fully and freely without fear of public disclosure. We deem this purpose and the underlying considerations to be of paramount concern. Subjecting the confidential file to *in camera* review by the trial court (as well as the appellate courts and staff members) would jeopardize the treatment process and undermine the public interests supporting the privilege. Simply stated, an absolute privilege of this type and in these circumstances requires absolute confidentiality.[15]

We conclude, therefore, that under these circumstances, the trial court acted properly in refusing the defense access to the arguably useful information in the psychologist's file.

### III.

■ Appellant contends the lower court improperly refused to suppress the victim's identification testimony.

14. For similar reasons, this Court has recently held that the statutory privilege of 42 Pa.C.S.A. § 5944 did not bar the admission of a parent's psychological evaluation in a dependency proceeding. *In re Bender*, 366 Pa.Super. 450, 531 A.2d 504 (1987).

15. We note parenthetically that permitting an *in camera* review of information protected by the absolute privilege between psychologist and client could possibly render other absolute privileges subject to the same limitation.

Specifically, he argues that the two photographic arrays and the pre-trial lineup were unduly suggestive.

Upon review of a challenge to pre-trial identification procedures, we must determine whether those procedures were so suggestive and thus, unreliable, that a mistaken identification was the necessary result. *Commonwealth v. Thomas*, 363 Pa.Super. 348, 352, 526 A.2d 380, 381 (1987). In determining the reliability of the identification, the following factors are considered:

> ... the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), *quoted in, Commonwealth v. Sample*, 321 Pa.Super. 457, 461, 468 A.2d 799, 801 (1983). In applying the test "we are to consider only the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Commonwealth v. Cavalieri*, 336 Pa.Super. 252, 254–255, 485 A.2d 790, 791 (1984).

In the opinion denying the motion to suppress the photo array identifications, the suppression court reviewed the facts supporting a finding of reliability. The victim had viewed her assailant for about fifteen minutes in fairly well-lit rooms. Given the nature of the sexual attack, the victim had an opportunity to view the attacker at close range. In fact, the victim stated that she looked into her assailant's face during the attack and concentrated on his characteristics because "I wanted to always remember exactly what he looked like so that I could recognize him anywhere at anytime." (Notes of suppression hearing 1/23/86 at 13). Two months after the assault, the victim identified appellant as her assailant by selecting his photograph from an array of 21 photographs. All of the photos

were of male Caucasians and half of the subjects wore glasses. We agree with the suppression court that nothing in this first photo array could have suggested that appellant was the assailant.

Nonetheless, appellant maintains that the first photo array should have been suppressed because his photo did not match the victim's initial description of the assailant given to the police. In our view, appellant confuses the question of credibility with a claim of undue suggestiveness. It was the duty of the suppression court to assess the alleged contradiction between the victim's identifications. "The scope of our review is limited to determining whether the factual findings of the court in the suppression hearing are supported by the record, and whether the conclusions of law drawn therefrom are correct." *Commonwealth v. Scaine*, 337 Pa.Super. 72, 76, 486 A.2d 486, 488 (1984).

Appellant also claims the second photo array was unduly suggestive. That photo array, which contained all of the photographs from the first array except for appellant's photo, was shown to the victim nine months after the initial identification. The victim did not identify any of the individuals in the second array. In our judgment, the second photo array could not have denied appellant his due process rights since the victim did not even make an identification at that time.

Appellant's final claim is a similar challenge to the third identification. On August 22, 1985, eleven months after the initial identification, the victim identified appellant at a police lineup. Appellant asserts that the identification should have been suppressed because none of the participants in the lineup except for appellant matched the victim's description of the assailant. We agree with the suppression court that nothing about the lineup was unduly suggestive.

Having determined that there was no error in the pre-trial identification procedures, it follows that we must also reject appellant's claim that the victim's in-court identi-

fication was tainted by the pre-trial identifications. *See Commonwealth v. Thomas*, 363 Pa.Super. at 352–353, 526 A.2d at 381, 382.

## IV.

In appellant's next challenge, he asserts that he was prejudiced by misconduct on the part of the prosecution. During the investigation of the assault, the police interviewed a witness, Ms. Janet Jones. According to defense counsel, the witness had seen the assailant at the scene of the crime and had given the police a physical description. Appellant now claims that the Commonwealth failed to disclose Ms. Jones's alleged statement to the police, thus causing irreparable prejudice.

Assuming without deciding that the Commonwealth was obliged to make the information available to the defense, for two reasons, we cannot agree with appellant's contention. First, it is undisputed that the witness was listed in the police report which was made available to defense counsel during discovery. It appears, however, that her name was inadvertently given in the report as both "Janet Jones" and "Janet Nelson". Such an oversight is not tantamount to prosecutorial misconduct in appellant's case. Although appellant may have had difficulty in locating the witness, we note that the Commonwealth was also unable to find the witness until shortly before trial. (N.T. 3/13/86 at 6, 3/14/86 at 142–143). Upon locating the witness, defense counsel admits that he was notified by the Commonwealth of her whereabouts and had an opportunity to interview her. *Id.*

Second, and more significantly, appellant could not have been prejudiced by the Commonwealth's alleged failure to disclose the information. Not only did appellant contact Ms. Jones prior to trial, but the witness was also called to testify for the defense. Further, the witness's testimony was virtually identical to that which defense

counsel claims was withheld prior to trial.[16]  Contrary to appellant's claim that the witness suffered a memory lapse during her testimony, she was responsive to all questions posed by defense counsel.  (N.T. 3/13/86 at 139–144).  For these reasons, we reject appellant's claim of prosecutorial misconduct and prejudice.

## V.

Appellant's final issue challenges the trial court's denial of a requested jury instruction.  The basis of this claim is the inconsistency between the victim's description of the assailant to the police and her subsequent trial testimony.  Because the initial description did not match appellant's physical features, defense counsel requested the following instruction:

> A victim or other witness can sometimes made [sic] mistakes when trying to identify the criminal.  If certain factors are present, the accuracy of identification testimony is so doubtful that a jury must receive it with caution if the witness' positive testimony as to identity *is weakened by inconsistencies in the rest of his testimony.*  Second Alternative (When there is jury issue as to whether caution is required)—If you believe that this factor is present, then you must consider with caution the testimony of [the victim] identifying the defendant as the person who committed the crime.  If, however, you do not believe that this factor is present, then you need not receive the testimony with caution; you may treat it like ordinary testimony, as a statement of fact.

Brief for appellant at 30 (emphasis added).

A trial court is not required to accept the jury instruction submitted by counsel.  *See Commonwealth v. Smith,* 511 Pa. 343, 354, 513 A.2d 1371, 1377 (1986), *cert. denied,* — U.S. —, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987).  So long as the court's charge fully and adequately ex-

---

16.  Ms. Jones testified that the man she saw leaving the storeroom was between 40 and 50 years of age, unkempt, with lines in his face, had dark hair with some graying, and wore a cap.

plained the relevant legal principles which apply to the evidence presented at trial, the charge is correct. *See Commonwealth v. Coleman*, 344 Pa.Super. 481, 484, 496 A.2d 1207, 1209 (1985).

■ We agree with the trial court that the proffered instruction was inapplicable and improper. As the underscored language of the proposed charge indicates, that instruction requires inconsistencies within the witness's own testimony. Here, the victim's testimony was not inconsistent; the inconsistency existed between the victim's prior non-testimonial statement to the police and her trial testimony. The court, therefore, was correct in rejecting the proposed instruction.

■ Moreover, the court did not ignore the identification issue but, instead, charged the jury as follows:

The Defendant also challenges the identification of the himself as the assailant in this case. In her testimony, [the victim] has identified the Defendant as the person who committed the crime. The accuracy of her identification of the Defendant is disputed. You should consider all of the evidence relevant to the question of who committed the crime including the testimony of the witnesses and particularly [the victim] and Mrs. Jones, and any evidence of facts or circumstances from which identity or non-identity of the criminal may be inferred. You cannot find the Defendant guilty unless your are satisfied beyond a reasonable doubt by all the evidence, direct and circumstantial, not only that the crime was committed but that it was the Defendant who committed it.

(N.T. 3/14/86 at 210–211).

We are satisfied that this charge adequately addressed the disputed identification issue.

## VI.

Having found no basis for appellant's claims of error, we affirm the judgment of sentence.