584 A.2d 956

**COMMONWEALTH of Pennsylvania**

v.

**James E. HYATT, Appellant.**

Superior Court of Pennsylvania.

Argued March 14, 1990.

Filed Dec. 14, 1990.

Reargument Denied Jan. 28, 1991.

Mariann E. Jarvis–Luksik, Pittsburgh, for appellant.

Edward M. Clark, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before CIRILLO, President Judge, and FORD ELLIOTT and BROSKY, JJ.

CIRILLO, President Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Allegheny County against appellant, James E. Hyatt. Following a jury trial, Hyatt was convicted of one count of rape. He filed timely post-trial motions which were denied and thereafter the court imposed sentence. In this appeal, Hyatt raises ten issues for our consideration:

1. Did the trial court err in failing to suppress evidence seized from defendant's vehicle without a search warrant?

2. Did the trial court err in failing to suppress evidence seized from defendant's person, without a warrant and without defendant's voluntary consent?

3. Did the trial court err in *sua sponte* giving a jury instruction on evidence of flight by defendant?

4. Did the trial court err in failing to instruct the jury on evidence of other crimes or improper conduct by defendant?

5. Did the trial court err in quashing defendant's subpoena *duces tecum* to Pittsburgh Action Against Rape?

6. Did the trial court err in denying a new trial where the verdict was inconsistent?

7. Did the trial court err in disallowing defense cross examination of the alleged victim concerning surgery which she underwent prior to the alleged crime?

8. Did the trial court err in denying examination of alleged victim regarding bias or motivation?

9. Did the trial court err in refusing to grant defendant's request for jury voir dire?

10. Did the trial court err in failing to grant defendant's demurrer to Commonwealth's case in chief?

Upon review, we conclude that Hyatt's fifth claim is meritorious and requires vacatur of his judgment of sentence. Therefore, we address only that issue.

Hyatt claims that the trial court erroneously quashed his subpoena *duces tecum* which he served upon Pittsburgh Action Against Rape ("PAAR"), the rape crisis center where the rape victim received counselling. The subpoena directed PAAR to produce its file concerning the rape victim. Hyatt claims that he served the subpoena so that PAAR would produce in court "any and all of its records in its possession for examination by the court to discern if any exculpatory material may have been contained therein." PAAR refused to accept the subpoena and made an oral motion to quash the subpoena at a hearing before the Honorable Jeffrey A. Manning. At the hearing, Hyatt was permitted to question Molly Knox, the director of PAAR, only about the type of information usually maintained in

PAAR file; he was not permitted to question Knox with respect to any specific information contained in the victim's records. Subsequently, the trial court granted PAAR's motion to quash.

In its opinion in support of its decision to grant the motion to quash, the trial court stated that it had heard testimony from Knox regarding the information routinely developed by PAAR during its counselling sessions. The court stated, "no substantially verbatim statements by the victim exist or are maintained by PAAR; nor does any material exist which could be considered as such; nor does the victim adopt as her own, any information written or recorded by PAAR's sexual assault counselors." The trial court concluded that the information contained in the files could not be deemed material evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Therefore, the trial court reasoned, it was unnecessary to conduct an *in camera* review of the victim's PAAR records.

Hyatt claims that it was erroneous for the trial court to refuse to conduct an *in camera* review of the file and for the trial court to preclude him from reviewing, or questioning Knox about, the victim's file. Hyatt contends that the trial court's actions contravene the mandates of *Commonwealth v. Wilson*, 375 Pa.Super. 580, 544 A.2d 1381 (1988), *alloc. granted*, 525 Pa. 582, 575 A.2d 113 (1990).[1] We agree.

The facts in *Wilson* are remarkably similar to those in the case at bar. Wilson was convicted of the rape and indecent assault of a woman. The day after the assault the

1. The trial court stated that the holding in *Wilson* is in conflict with our earlier decision in *Commonwealth v. Kyle,* 367 Pa.Super. 484, 533 A.2d 120 (1987). In *Kyle,* this court upheld the trial court's decision denying defense counsel access to the file prepared on the victim by a psychologist. The court held that pursuant to 42 Pa.C.S. § 5944 the psychologist's records were privileged communications. *Id.,* 367 Pa. Superior Ct. at 504, 533 A.2d at 130. In the instant case, Judge Manning stated that "in view of *Kyle* as well as the plain meaning of section 5945.1(b), it makes little sense that a statute designed to grant a privilege of confidentiality for any communication between a rape victim and a counselor would not further protect the records or reports made by that counselor in the course of his or her counselling efforts."

victim went to Alice Paul House ("APH"), a rape crisis center, and was interviewed by staff members. Prior to trial, Wilson served a subpoena *duces tecum* on the director of APH, requesting production of their records. APH filed a petition to quash the subpoena, stating that the records were confidential pursuant to 42 Pa.C.S. § 5945.1. The trial court granted APH's motion.

On appeal, Wilson claimed that section 5945.1 was inapplicable and, in the alternative, if it was applicable it was unconstitutional. We examined our supreme court's decision in *In the Matter of Pittsburgh Action Against Rape*, 494 Pa. 15, 428 A.2d 126 (1981), a case decided prior to the enactment of section 5945.1, in which the court refused to create an absolute privilege of confidentiality for communications between a rape counselor and victims seeking aid. *Id.*, 494 Pa. at 26, 428 A.2d at 131. The court, in *In the Matter of Pittsburgh*, stated that

> upon defense request a court should authorize defense inspection of *only those statements of the complainant contained in the file which bear upon the facts of the alleged offense.* The court, however, must not permit defense inspection of statements having no bearing on the facts of the counselling services PAAR provides. The trial court shall not permit defense review of any other aspect of the file.

*In the Matter of Pittsburgh*, 494 Pa. at 19, 428 A.2d at 127–28 (emphasis added).[2] We noted that our supreme

---

**2.** Following *In the Matter of Pittsburgh,* our legislature enacted 42 Pa.C.S. § 5945.1 which grants a testimonial privilege to sexual assault counselors. Section 5945.1 states the following:

§ 5945.1 Confidential communications to sexual assault counselors
(a) Definition.—As used in this section the following words and phrases shall have the meanings given to them in this subsection:
*"Rape crisis center."* Any office, institution or center offering assistance to victims of sexual assault and their families through crisis intervention, medical and legal accompaniment and follow-up counselling.
*"Sexual assault counselor."* A person who is engaged in any office, institution or center defined as a rape crisis center under this section, who has undergone 40 hours of training, and is under the control of a direct services supervisor of a rape crisis center, whose

court in *In the Matter of Pittsburgh* also required the trial court conduct its review of the PAAR file *in camera* so that "... only those statements of the complainant, and not interpretations or recollections of the PAAR counsellor, are to be made available." *Id.*, 494 Pa. at 28, 428 A.2d at 132. The court limited the term "statements" to include only "verbatim accounts of the complainant's declarations and notes that the complainant has approved as accurately reflecting what she said." *Id.*, 494 Pa. at 28, 428 A.2d at 132.

In *Wilson*, we further cautioned that only statements having a direct bearing to the facts of the alleged offense may be released, and not those relating to counselling services. *Wilson*, 375 Pa.Super. at 583, 544 A.2d at 1383. Prior to reaching our conclusion in *Wilson*, we noted that section 5945.1 grants sexual assault counselors a privilege "not to be examined as a witness in any civil or criminal proceeding without prior written consent of the victim being counselled." *Id.*, 375 Pa.Superior Ct. at 583, 544 A.2d at 1383; *see* 42 Pa.S.C. § 5945.1. We then concluded that section 5945.1 was inapplicable to the facts in *Wilson* because defense counsel had sought only the pretrial examination of certain materials in the possession of the rape crisis center and *never sought to examine any counselor as a*

primary purpose is the rendering of advice, counseling or assistance to victims of sexual assault.

*"Victim."* A person who consults a sexual assault counselor for the purpose of securing advice, counseling or assistance concerning a mental, physical or emotional condition caused by a sexual assault.

*"Confidential communication."* Information transmitted between a victim of sexual assault and a sexual assault counselor in the course of that relationship and in confidence by a means which, so far as the victim is aware, does not disclose the information to a third person other than those who are present to further the interests of the victim in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or an accomplishment of the purposes for which the sexual assault counselor is consulted. The term includes all information received by the sexual assault counselor in the course of that relationship.

(b) Privilege.—A sexual assault counselor has a privilege not to be examined as a witness in any civil or criminal proceeding without the prior written consent of the victim to the counselor or as to any advice, report or working paper given or made in the course of the consultation.

*witness. Id.,* 375 Pa.Superior Ct. at 584, 544 A.2d at 1383 (emphasis added). *See also Commonwealth v. Samuels,* 354 Pa.Super. 128,. 511 A.2d 221 (1986) (when defense counsel does not seek to examine a rape crisis counselor as a witness section 5945.1 is inapplicable). Accordingly, we found the principles set forth in *In the Matter of Pittsburgh, supra,* to be controlling. As a result we vacated Wilson's judgment of sentence and remanded the case to the trial court for an *in camera* hearing. We stated:

If the court concludes that any or all of the materials released to it by APH are statements of the complainant that should have been disclosed to appellant and heard by the jury, then a new trial shall be granted. If, however, the court concludes that the materials are not statements of the complainant or are statements relating only to counselling services, and thus outside the scope of defense review, the court shall reimpose sentence.

*Id.,* 375 Pa.Superior Ct. at 585, 544 A.2d at 1384.

Most recently, in *Commonwealth v. Aultman,* 387 Pa.Super. 113, 563 A.2d 1210 (1989), *alloc. granted,* 525 Pa. 575, 575 A.2d 107 (1990), this court followed *Wilson* and concluded that it was reversible error for the trial court to quash the portion of a subpoena, served by Aultman upon Women Against Rape ("WAR") personnel, directing a WAR employee to bring to trial all the records pertaining to the victim. *Id.,* 387 Pa.Superior Ct. at 122, 563 A.2d at 1215.

Aultman claimed that section 5945.1 was inapplicable because he was not seeking to examine a counselor but only attempting to obtain records. We agreed, and noted that in *Samuels, supra,* we had stated that section 5945.1 is inapplicable when defense counsel is not seeking to examine a counselor as a witness. *Id.,* 387 Pa.Superior Ct. at 122, 563 A.2d at 1215. Further, we noted that *Samuels* held that because the trial court, in its review of appellant's post-trial motions, had examined the PAAR records and found that they contained no statements made by the victim, appellant was not prejudiced by the trial court's improper quashal of

the subpoena. In *Aultman,* we distinguished *Samuels* and concluded that because the trial court in *Aultman* never conducted an *in camera* review of the records, it, like the trial court in *Wilson,* had committed reversible error. *Id.,* 387 Pa.Superior Ct. at 124, 563 A.2d 1216.

In this case, Hyatt has sought only the victim's PAAR records and we conclude, therefore, that section 5945.1 is inapplicable. Accordingly, we find that the supreme court's decision in *In the Matter of Pittsburgh* is dispositive. Pursuant to *In the Matter of Pittsburgh* we vacate the judgment of sentence and remand the case so that the trial court may conduct an *in camera* review to determine if there are any statements of the victim in the PAAR records which "bear upon the facts of the alleged offense." *Wilson,* 375 Pa.Super. at 583, 544 A.2d at 1383. If the court concludes that any or all of the materials released to it by PAAR contain statements of the victim that should have been disclosed to Hyatt and heard by the jury, then a new trial shall be granted. If, on the other hand, the trial court determines that the materials do not contain statements of the complainant or contain statements relating only to counselling services, and thus are outside the scope of defense review, then the court shall reimpose sentence.

Judgment of sentence vacated and case remanded.

FORD ELLIOTT, J., files a concurring opinion.

FORD ELLIOTT, Judge, concurring:

As I agree that the issue on which the majority reverses is controlled by this Court's decisions in *Commonwealth v. Wilson, supra,* and *Commonwealth v. Aultman, supra,* I concur in the result reached by the majority. But I do so under protest and with strong reservations about the absurdity of such a result.

As set out by the majority, *In the Matter of Pittsburgh Action Against Rape, supra,* the supreme court declined to find a common law privilege for communications between PAAR personnel and persons seeking PAAR's assistance.

22

The court recognized the important interests involved—society's interest in promoting such communications and its concurrent interest in the truth-seeking function of the criminal justice system. The court then tipped the balance in favor of the rights of the accused thereby creating only a qualified privilege which allowed that statements by the complainant that bear on the facts of the alleged offense, which are contained in the rape crisis counselor's file, are subject to disclosure to the defendant. The remainder of the file was to remain confidential. Implicit in this decision was a recognition that because only a qualified privilege of confidentiality was recognized, it was subject to being balanced against a defendant's confrontation rights. However, also implicit in this decision, although not specifically recognized, was that the privilege itself effectively is destroyed by any *in camera* review by the trial court in making its determination of whether such statements exist. As noted by Justice Larsen, in dissent, in *PAAR:*

> '*A breach of this right of privacy occurs when the information is transmitted to another, whether or not that person (recipient) promises not to further transmit the information to others.* It is knowledge of private and personal matters by another that is offensive—not that the knowledge may or may not continue on a course of travel to yet another eager ear.' *In re June 1979 Allegheny County Investigating Grand Jury,* 490 Pa. 143, 415 A.2d 73, 79 (1980) (from dissenting opinion of Justice Rolf Larsen). *This breach is no less severe because an inspection of the confidential communication has been made in camera.* Under the procedure required by the majority, the confidential disclosures would be made available to the trial court, and at that moment, the confidence is broken, the trust in the relationship is shattered. And, the more sensitive the nature of the communication, the greater the need for protection.

*In re PAAR, supra,* 494 Pa. at 60–61, 428 A.2d at 149 (emphasis added).

It was in response to the *PAAR* holding, that the legislature that same year established an absolute privilege concerning confidential communications between a rape victim and a sexual assault counselor by enacting 42 Pa.C.S. § 5945.1:

§ 5945.1 Confidential communications to sexual assault counselors

(a) Definition.—As used in this section the following words and phrases shall have the meanings given to them in this subsection:

*"Rape crisis center."* Any office, institution or center offering assistance to victims of sexual assault and their families through crisis intervention, medical and legal accompaniment and follow-up counselling.

*"Sexual assault counselor."* A person who is engaged in any office, institution or center defined as a rape crisis center under this section, who has undergone 40 hours of training and is under the control of a direct services supervisor of a rape crisis center, whose primary purpose is the rendering of advice, counseling or assistance to victims of sexual assault.

*"Victim."* A person who consults a sexual assault counselor for the purpose of securing advice, counseling or assistance concerning a mental, physical or emotional condition caused by a sexual assault.

*"Confidential communications."* Information transmitted between a victim of sexual assault and a sexual assault counselor in the course of that relationship and in confidence by a means which, so far as the victim is aware, does not disclose the information to a third person other than those who are present to further the interests of the victim in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or an accomplishment of the purposes for which the sexual assault counselor is consulted. The term includes all information received by the sexual assault counselor in the course of that relationship.

(b) Privilege.—A sexual assault counselor has a privilege not to be examined as a witness in any civil or criminal proceeding without the prior written consent of the victim to the counselor or as to any advice, report or working paper given or made in the course of the consultation.

The purpose of the privilege enunciated in § 5945.1 is to protect the rape victim's privacy interests, promote the societal interest in rehabilitating victims, encourage the reporting of the crime of rape, and monitor the institutions with which rape victims must deal. *See New Privilege for Communications made to a Rape Crisis Center Counselor*, 55 Temple L.Q. 1124 (1982).

Now some *nine* years later, this court has limited this legislatively created privilege by deciding, as we do today, that § 5945.1(b) only grants a sexual assault counselor a privilege not to be called to testify in a court proceeding without the consent of the victim, and that this privilege does not extend to the file, working papers or records specifically generated as a result of the confidential relationship between counselor and victim. The incongruity of this interpretation was reflected upon by the trial court herein when it read the plain meaning of § 5945.1 to indicate that "it makes little sense that a statute designed to grant a privilege of confidentiality for any communication between a rape victim and a counselor would not further protect the records or reports made by that counselor in the course of his or her counselling efforts." Trial court opinion, 7/10/89 at 16. The issue as decided by this court effectively allows a defendant to obtain through the back door what is barred by the front. To hold that § 5945.1 is only testimonial in nature, we have usurped the purpose and function of the statute. The irony of this interpretation, is that as a practical matter, and strategically, it may be far more beneficial to a defendant to make use of cold statements, reports, and written impressions of the victim without being required to receive the testimony of a live witness-counselor whose version and interpretation of these

statements, reports and impressions would be skewed in favor of the victim. In point, why would you want the counselor, if you can have the records.

Our majority holding today, like those that came before it, renders the relationship between the rape victim and the counselor "ineffective either because a person is deterred from entering into it or because the person is frightened into non-disclosure during its course." *In Re PAAR, supra,* 494 Pa. at 36–37, 428 A.2d at 136–37 (Larsen, J. dissenting). Rape crisis counseling often acts as the trauma center for rape victims where counselors must react quickly to treat the physical and emotional injuries of rape, so that long term treatment may take place. The compelling public interest in allowing the rape crisis counseling to occur is not to build a case for the prosecution, but rather to deal with the trauma of violent assault and begin the healing process. In fact, this treatment is quite often anything but a search for the truth. Of necessity, the nature of the counselling will be at times torturous, self accusatory and even self destructive—such is the nature of the healing process. In enacting an absolute privilege of confidentiality to shield this healing process the legislature recognized that the interest being served was the rehabilitation of the victim and not the vindication of the interests of society which is the aim of prosecution.[1] Put in this context, these are not competing interests, but rather mutually exclusive ones. To say that they can be balanced is to deny they are mutually exclusive.

The current state of the law is reflective of the inadequate legal response to a rape victim's needs and interests. It seems ironic at this moment in time, some nine years after *PAAR* was decided, to be harkening back to Justice Larsen's dissent, joined in by Justice Flaherty, which advocated the need for a broad interpretation of the privilege

---

**1.** In the event that a counselor would reveal confidential information to a prosecutor or in any active way use the relationship with the alleged victim to further the aims of the prosecution, then the privilege is breached and the defendant is entitled to take advantage of that breach.

between counselor and victim. The rationale presented in that dissent could not be elaborated more eloquently on herein, and therefore, I incorporate it by reference. *In re Paar, supra,* 494 Pa. at 34, 428 A.2d at 135 (Larsen, J. dissenting).

In sum, the dissent noted that in the not too distant past, rape was treated very differently than other crimes in society in that focus was placed not just on the defendant but on the victim, as well. Rape victims were very often stigmatized in our society. In order to circumvent a false accusation of rape, the law of this Commonwealth at one time referred to the rape complainant as the "prosecutrix", required corroborating evidence, and special jury instructions concerning the victim's emotional vulnerability. *Id.* Moreover, the laws of this state had required prompt reporting of a rape, reasonable resistance by the victim, and even though it was not permissible to scrutinize a rape victim's prior sexual history, a learned defense counsel was always permitted to raise a question of the victim's reputation in the mind of the jury. *Id.* Such laws were premised on the myth surrounding rape that the victim got what she wanted. Accordingly, often times the legal structure degraded the victim all over again, in the courtroom, in responding to the initial assault. After having evolved socially and legislatively to the point of codifying an absolute privilege concerning confidential communications between a rape victim and a sexual assault counselor, to now take a step back in time is not only offensive, but should be repugnant to an enlightened society.

I see no sufficient reason, and no decision of this court has provided a policy basis, for distinguishing between the records of a rape crisis counselor and those of a psychiatrist or psychologist. In this court's decision in *Commonwealth v. Kyle, supra,* relied upon by the trial court, we held that the file of a psychologist was privileged absolutely from disclosure to the defendant in a rape case.[2] The wording of

2. But see *Commonwealth v. Lloyd,* 523 Pa. 427, 567 A.2d 1357 (1989), wherein, the supreme court held that psychotheraputic records of a

the privilege addressed in *Kyle* read very much the same as 42 Pa.C.S. § 5945.1.

42 Pa.C.S. § 5944. Confidential Communications to licensed psychologists.

No person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

Amended February 20, 1990, to include psychiatrists, 42 Pa.C.S. § 5944, Confidential communications to Psychiatrists or Licensed Psychologists. Recognizing that this privilege was testimonial in nature, the court in *Kyle*, reasoned that the real interest sought to be protected by the privilege was the confidential communications between the client and psychologist; therefore, the psychologist's records which memorialized such communications were subject to the privilege as well.[3]

The *Kyle* court also rejected the defendant's request for *in camera* review of the file by the trial court and reaffirmed that an absolute privilege by definition may not be subject to a balancing test.

minor victim of sexual assault in the possession of a hospital were subject to review by the defendant under the rights of confrontation and compulsory process as defined in Article 1, § 9 of the Pennsylvania Constitution. However, these records already had been subject to *in camera* review by the trial court and therefore presumably were no longer subject to any privilege. The issue of the privileged nature of the records was raised by the dissenting opinion, however, this issue was never addressed by the majority.

**3.** The reasoning in *Kyle* also is applicable as to any number of other statutory privileges, which are testimonial in nature, and provide protection from disclosure of confidential information. *See* 42 Pa. C.S. § 5929, Physicians not to disclose information, 42 Pa.C.S. § 5943, Confidential communications to clergymen, and 42 Pa.C.S. § 5945, Confidential communications to school personnel.

28

Finally, appellant argues that without even an *in camera* inspection of the file by the court, it cannot be determined whether any statements made by the victim would be helpful to the defense. We decline to compromise what we have determined is an absolute privilege from disclosure. As we noted above, the purpose of the psychologist-client privilege is to aid in the effective treatment of the client by encouraging the patient to disclose information fully and freely without fear of public disclosure. We deem this purpose and the underlying considerations to be of paramount concern. Subjecting the confidential file to *in camera* review by the trial court (as well as the appellate courts and staff members) would jeopardize the treatment process and undermine the public interests supporting the privilege. Simply stated, an absolute privilege of this type and in these circumstances requires absolute confidentiality.

*Commonwealth v. Kyle,* supra, 367 Pa.Super. at 505, 533 A.2d at 131. I would submit that this same cogent reasoning applies to the privilege enacted to protect the confidential communications to sexual assault counselors.

I could, I think, make a persuasive argument on solid grounds of statutory interpretation that the language of § 5945.1 is at the very least, ambiguous, and that we must therefore look to the intent of the legislature; (1 Pa.C.S. § 1921) and in so doing we must accept that the legislature did not intend a result that is absurd. (1 Pa.C.S. § 1922). A resulting interpretation would posit that the privilege exercised by the counselor is twofold: not to be examined as a witness in any civil or criminal proceeding without the prior written consent of the victim; and, a privilege as to any advice, report or working paper given or made in the course of consultation. This reading would of course bring the records in question in this case within the purview of the privilege and also would speak in a more rationale way to the intent of the legislature in designing the privilege in the first instance. After all, in *PAAR* the rape crisis

counselor was found in contempt not for refusing to testify—but for failing to release her records to the court.

As the statute already has been subject to a different interpretation by this court, I recognize that I am bound by that reading. However, a statute defining an absolute privilege should not be ambiguous; therefore, I call upon the legislature to set about to clarify the statute and to *reaffirm* its recognition of the needs and interests of the rape victim in our society. For at present, the privilege it sought to establish through 42 Pa.C.S. § 5945.1 as a safe haven for the healing process of victims of violence has now become an island unto itself to which no victim dare return.

As of this writing, the supreme court has accepted review in both the *Wilson* and *Aultman* cases relied upon by this court. It is hoped that these cases may provide a vehicle for our highest court to reinstate the intent of our legislature, and to once again create a healing environment in our Commonwealth for victims of violence. However, until such time as this should occur, sexual assault counselors would be wise to advise their clients that anything they say can and will be used against them in a court of law.