532 A.2d 828

**COMMONWEALTH of Pennsylvania**

v.

**Stephen LLOYD, Appellant.**

Superior Court of Pennsylvania.

Submitted June 8, 1987.

Filed Aug. 24, 1987.

Reargument Denied Nov. 2, 1987.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Donna G. Zucker, Assistant District Attorney, Philadelphia, for Com.

Before CIRILLO, President Judge, and TAMILIA and WATKINS, JJ.

TAMILIA, Judge:

On August 2, 1985, after a four-day trial, a guilty verdict against appellant was returned on charges of rape, statutory rape, indecent assault, and corruption of minors. After denial of post-verdict motions and appellant's motion to reconsider sentence, appellant was sentenced to an aggregate term of imprisonment of eight and one-half (8½) to seventeen (17) years. Appellant timely appeals the judgment of sentence. We affirm.

Appellant raises three issues for our review: 1) did the trial court err in admitting irrelevant and prejudicial evidence of appellant's treatment for venereal disease; 2) did the trial court deny appellant his constitutional right to confrontation by refusing to allow appellant's counsel an opportunity to review the victim's psychiatric treatment

records; and, 3) did the trial court improperly consider defendant's refusal to admit his guilt when sentencing, thus violating appellant's right to self-incrimination?

As to the first issue, appellant failed to preserve at trial (N.T. 8/1/85, pp. 4, 11–12), and in post-verdict motions [1] his claim that the admittance of evidence of his history of treatment for venereal disease was improper due to its *prejudicial effect* (while preserving the relevance issue), therefore, that claim is waived. Only those issues included in post-verdict motions will be considered for appellate review. *Commonwealth v. Monarch*, 510 Pa. 138, 507 A.2d 74 (1986); *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979); *Commonwealth v. Thier*, 354 Pa.Super. 7, 510 A.2d 1251 (1986); *see* Pa.R.A.P. 302. "One of the purposes of this rule is to afford trial courts the first opportunity to correct error or grant new trials where necessary and, thus, obviate the need for appellate review." *Monarch, supra*, 510 Pa. at 146, 507 A.2d at 78. Here, the Honorable Ricardo C. Jackson only addressed the claim of relevancy (Slip Op., Jackson, J., 3/4/87, p. 5), and not a claim of prejudice. We will do the same. *See Commonwealth v. Allen*, 269 Pa.Super. 146, 409 A.2d 106 (1979) (where defendant objected only on grounds of relevance, he waived claims that evidence that he had gonorrhea and had infected the victim of a rape-murder was excludable because it was remote and prejudicial).

Admission or exclusion of evidence is a matter committed to the sound discretion of the trial court. *Commonwealth v. Cargo*, 498 Pa. 5, 444 A.2d 639 (1982); *Commonwealth v. Barnhart*, 345 Pa.Super. 10, 497 A.2d 616 (1985). In order to be admissible evidence must be both competent and relevant. *Commonwealth v. Hill*, 340 Pa.Super. 155, 489 A.2d 889 (1985); *Commonwealth v. Jackson*, 336 Pa.Super.

---

1. Appellant's post-verdict motion challenge to the medical evidence concerning appellant's venereal disease history is contained in paragraph 3 of his motion, and reads in full: "[t]he Court erred in allowing the introduction of medical records of a Stephen Lloyd in the Commonwealth's case-in-chief without proper authentication or relevance."

609, 486 A.2d 431 (1984). "Evidence is relevant if it tends to make more or less probable the existance of some fact material to the case, it tends to establish facts in issue or when it in some degree advances the inquiry and thus has probative value." *Commonwealth v. Shain,* 324 Pa.Super. 456, 462, 471 A.2d 1246, 1249 (1984); *see Commonwealth v. Haight,* 332 Pa.Super. 269, 481 A.2d 357 (1984); *Commonwealth v. Sinwell,* 311 Pa.Super. 419, 457 A.2d 957 (1983).

The record discloses that during the summer of 1983, appellant supervised a government-funded program, titled "Play Street", in which the victim, six-year old Carol Williams, along with other children participated. Testimony centered on only three of the occasions in which appellant assaulted the child and committed various sex acts on her during that summer. On direct examination the victim's mother, Geneva Williams, testified that the child had made complaints of vaginal problems after the summer of 1983 (N.T. 7/31/85, p. 33), further, on cross-examination the mother testified that she noticed her child scratching both her groin and rectal areas in July, 1983 (N.T. 7/31/85, p. 59). However, the mother did not become aware of what had happened to her daughter until November, 1983 when she first noticed a vaginal discharge from her daughter and, after taking her daughter to a hospital on November 15, 1983, was told by doctors that her daughter had been "touched" and that she had a venereal disease (N.T. 7/31/85, pp. 63–64).

In an attempt to show both the occurrence of the crime and the identity of the perpetrator, the Commonwealth introduced the venereal disease history of appellant through testimony of Geneva Smith, the clerical supervisor of the Philadelphia Public Health Department, and Dr. Jan Paradise, a board certified pediatrician with a specialty of sexually transmitted disease in children. Ms. Smith testified, from a review of the department's medical records, that appellant was diagnosed as having syphilis on August 4,

1981 (N.T. 8/1/85, pp. 15–17).[2]  On June 13, 1983, appellant returned to the clinic and Ms. Smith testified that the records indicated he complained of pubic itching, recurring bumps, pain, and soreness of his genitalia and was prescribed medication (N.T. 8/1/85, pp. 18–19).  Appellant tested negative for gonorrhea and syphillis during that visit (N.T. 8/1/85, pp. 27–28).

Upon direct examination Dr. Paradise, who reviewed the records of both the victim and appellant, testified it would be likely that a male with a medical history such as apellant's would convey a sexually transmitted disease to someone with whom he had sexual intercourse (N.T. 8/1/85, p. 42), because such a male would be in a higher risk group of getting other venereal diseases (N.T. 8/1/85, pp. 44–45). Further, Dr. Paradise testified that a child who had intercourse with such a male would likely have a vaginal discharge (N.T. 8/1/85, p. 45).  The doctor stated that a vaginal discharge in a female could be caused by gonorrhea or chlamydia (N.T. 8/1/85, p. 45).  During cross-examination Dr. Paradise stated that although a child could have a vaginal discharge without any sexual abuse it would be "unusual" (N.T. 8/1/85, p. 74).  Defense counsel did cross-examine Dr. Paradise on other possible causes for a discharge in a child besides sexual abuse (N.T. 8/1/85, p. 74–75).  Most importantly, under cross-examination by defense counsel, when asked her opinion, without a case history, of what caused the discharge in the victim, Dr. Paradise responded that the most common cause of vaginal discharge in children before puberty would be gonorrhea (N.T. 8/1/85, pp. 75–76).

■ We find the introduction of the appellant's venereal disease history both relevant and probative to the occurrence of the crimes of sexual abuse for which he was charged.  Dr. Paradise disclosed that in her opinion the most common cause of a vaginal discharge in a child as young as the complainant would likely be a venereal dis-

2. Appellant testified that in addition to the dates disclosed by Ms. Smith's records, he contracted gonorrhea in 1971 (N.T. 8/2/85, pp. 53–54).

ease, specifically gonorrhea. This coupled with Dr. Paradise's testimony that a man with a medical history such as appellant's could convey a sexually transmitted disease if he had intercourse tends to advance the inquiry as to whether a crime was committed and who the perpetrator was. The fact that appellant tested negative for gonorrhea in June, 1983 does not reflect so much on the relevancy of admitting the history as to the probability of his committing the crime. The possible exculpatory explanation that appellant was not the perpetrator of the crimes is a question for the finder of fact. We find no abuse of discretion on the part of the trial judge in admitting the evidence due to the evidence's tendency, coupled with the expert opinion regarding it, to make more or less probable the existance of the material facts.

█ Next, appellant claims his constitutional right to confrontation was denied by the trial court's refusal to allow appellant's counsel an opportunity to review the victim's psychiatric treatment records. After an *in camera* inspection of the records the trial court found they were not relevant, contained nothing of use to the defense, and did not suggest that the complainant was diagnosed as being delusional and/or hallucinatory, the stated reasons for appellant's seeking the records. We find this review by the lower court adequate under the United States Supreme Court's decision in *Pennsylvania v. Ritchie,* — U.S. —, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). *See* 11 P.S. § 2215 (restricting who may review child abuse reports to a court of competent jurisdiction, *inter alia*).

In *Ritchie,* the Court addressed the question of whether and to what extent a State's interest in the confidentiality of its investigative files concerning child abuse must yield to a criminal defendant's Sixth and Fourteenth Amendment right to discover favorable evidence.[3] Reversing the Pennsylvania Supreme Court and finding that no Confrontation

**3.** The Court's opinion in *Ritchie* examined the rights enumerated in the Confrontation Clause of the Sixth Amendment to the United States Constitution. Although *Ritchie* does not address the confrontation rights set forth in Article I, § 9 of the Pennsylvania Constitution, we

Clause infringement would be present if the trial court conducted an *in camera* inspection of the investigative reports concerning an abused child, the Court held in a plurality opinion:

> The opinions of this Court show that the right of confrontation is a *trial* right, designed to prevent improper restrictions on the type of questions that defense counsel may ask during cross-examination.... The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel received wide latitude at trial to question witnesses.... In short, the Confrontation Clause only guarantees 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish.' ... (Citations omitted; emphasis in the original.)

*Ritchie, supra* at —— ——, 107 S.Ct. at 998–999, 94 L.Ed.2d at 54–55. Although the plurality found Justice Blackmun writing separately on this point and not agreeing with their limitation of the right of confrontation to trial, we find the plurality controlling because Justice Blackmun concurred in the Court's judgment and its ruling that an *in camera* review by the trial court will adequately serve the defendant's interest while saving the Commonwealth's need to protect the confidentiality of those involved in child abuse investigations. Here, such a review has already taken place.

■■■ Lastly, we find appellant's claim, that the sentencing court impermissibly considered appellant's refusal to admit guilt when sentencing, waived for his failure to object during sentencing and failure to raise it in his motion for reconsideration of sentence. In order to have grounds for appellate review, all sentencing issues must be specifically preserved or raised either before the trial court, during the

believe for purposes of this case that those rights are sufficiently similiar to the Sixth Amendment to make *Ritchie* applicable.

sentencing proceeding or in a motion for modification of sentence. *Commonwealth v. Walls*, 481 Pa. 1, 391 A.2d 1064 (1978); *Commonwealth v. Whetstine*, 344 Pa.Super. 246, 496 A.2d 777 (1985). While an issue of the legality of sentence imposed can be raised for the first time on appeal, *Commonwealth v. Mathis*, 317 Pa.Super. 362, 464 A.2d 362 (1983), here we are presented merely with the propriety of the sentence, which must be raised below.[4] Additionally, after a review of the sentencing record, we conclude appellant's claim is not preserved by a claim of ineffectiveness of counsel because it lacks merit. *Commonwealth v. Buehl*, 510 Pa. 363, 508 A.2d 1167 (1986); *Commonwealth v. Frometa*, 366 Pa.Super. 313, 531 A.2d 434 (1987).[5]

Judgment of sentence affirmed.

4. As we stated in *Mathis, supra*, 317 Pa.Superior Ct. at 372, 464 A.2d at 368:
   By 'illegality of sentence' is meant that the sentence is, in and of itself defective: for instance, the offenses merged for purposes of sentencing ... or the court improperly sentenced the defendant as if he were convicted of an offense of a higher degree than he actually was ... or the sentence exceeded the permissible maximum. (Citations omitted.)

5. Note, appellant has also failed to preserve the sentencing issue as required by *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987), thus, the issue is not properly before us and we cannot rule on the merits.