548 A.2d 1250

COMMONWEALTH of Pennsylvania, Appellant,

v.

Brian C. MOORE, Appellee.

Superior Court of Pennsylvania.

Argued March 16, 1988.

Filed Sept. 30, 1988.

Kim B. Clark, Assistant District Attorney, Pittsburgh, for Com., appellant.

John Elash, Pittsburgh, for appellee.

Before TAMILIA, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This is an appeal from an order of the Allegheny County Court of Common Pleas, Criminal Division which vacated a prior order entered in the current action granting the Commonwealth access to those confidential medical records of the defendant held by the Allegheny County Health Department. The order also denied the Commonwealth's petition for a rule and adjudication of civil contempt against the Health Department for failure to produce those records.

We reverse and remand for entry of an order directing the Allegheny County Health Department to produce those medical records of the defendant which are necessary for the administration of justice.

Instantly, the Commonwealth presents three issues for our review on appeal:

I. Whether a judge of the Court of Common Pleas has the authority to order a local health agency to turn over records which are essential to a criminal prosecution?

II. Whether the Disease Prevention and Control Act of April 23, 1956 (35 Pa.S.A. § 521.15) makes health agency records confidential to the extent that such records may never be subject to subpoena power or court order?

III. Whether 42 Pa.C.S.A. § 8721 *et seq.* empowers the Commonwealth Court to grant access to confidential information held by local health agencies?

The pertinent facts are revealed in the record as follows: In late August of 1986, the Pittsburgh Police Department began investigating an alleged rape of a minor that occurred sometime earlier that month. The investigation was initiated after the victim, an eight-year-old female, was treated for gonorrhea in late August, subsequent to the alleged rape. Apparently, the child did not report the rape until she was questioned concerning how she contracted the venereal disease.

On September 17, 1986, the minor-victim was shown an array of nine photographs of black males. From this array, she selected the photograph of the defendant, Brian C. Moore, and identified Brian Moore as the man who raped her. Brian Moore was then arrested and charged with one count each of rape,[1] statutory rape,[2] indecent assault[3] and corruption of minors.[4]

1. 18 Pa.C.S.A. § 3121.
2. 18 Pa.C.S.A. § 3122.
3. 18 Pa.C.S.A. § 3126.
4. 18 Pa.C.S.A. § 6301.

Upon investigation, the Commonwealth believed that the defendant had been treated for gonorrhea by the Allegheny County Health Department in August of 1986. Consequently, on January 21, 1987, the District Attorney of Allegheny County filed a petition for access to confidential information in the Commonwealth Court pursuant to 42 Pa.C.S.A. § 8721 *et seq.*[5] The petition was filed in response to the refusal of the Health Department to honor a subpoena *duces tecum.* On January 29, 1987, the Commonwealth Court dismissed the Commonwealth's petition due to lack of jurisdiction. The Commonwealth Court reasoned that the Allegheny County Health Department is a local agency, not a Commonwealth agency, as required under 42 Pa.C.S.A. § 8723. Thus, the Commonwealth Court concluded it did not possess the requisite jurisdiction to order production of the defendant's medical records.

As a result of the Commonwealth Court's decision, the Commonwealth filed a similar petition with the Court of Common Pleas of Allegheny County. However, on Febru-

5. 42 Pa.C.S.A. § 8721 *et seq.,* Availability of otherwise confidential information, in pertinent part, reads as follows:

§ 8722. Petition for access to confidential information
The Attorney General, a district attorney, ... may ex parte petition any judge of the Commonwealth Court for an order providing access to confidential information.

§ 8723. Grounds for access
Any judge of the Commonwealth Court shall enter an order providing access to confidential information if, on the basis of a petition under section 8722 (relating to petition for access to confidential information), he find that:
(1) the petitioner is engaged in an on going investigation of criminal activity; and
(2) a Commonwealth agency may have confidential information reasonably related to such an investigation.

§ 8724. Disclosure of Confidential information
(a) General rule.—Disclosure of confidential information shall be limited as follows:
(1) disclosure by the Commonwealth agency holding such information shall be limited to persons personally and directly engaged in the ongoing investigation by the petitioner under section 8723 (relating to grounds for access); and
(2) disclosure by the petitioner:
(i) in the case of the Attorney General or a district attorney, shall be limited to judicial or administrative proceedings; ....

ary 27, 1987, the petition became moot when the defendant pleaded guilty to all charges.

However, on April 3, 1987, the defendant was allowed to withdraw his guilty plea, and the case was scheduled for trial on April 21, 1987. On the first day of trial, a hearing was held on the Commonwealth's previously filed petition for access to the defendant's medical records. The petition was granted, and the Health Department was ordered to produce the records. The Allegheny County Health Department refused to comply with the order, and the Commonwealth determined that it was unable to proceed to trial.

In response to the Health Department's noncompliance with the court order, the Commonwealth filed a petition for a rule and adjudication of civil contempt. After a hearing, the court vacated its prior medical record production order and denied the contempt petition. The court stated that, based upon its reading of the Disease Prevention and Control Act of April 23, 1956, 35 Pa.S.A. § 521.1 *et seq.*,[6] the medical records were absolutely confidential. Thus, the court believed it had no recourse but to reverse its prior order of April 21, 1987. Thereafter, the Commonwealth requested leave to appeal the order. The lower court granted the request, and this appeal followed.

■ Prior to reviewing the propriety of the lower court's decision to vacate its order granting the Commonwealth's petition for access to confidential information, we must determine whether it is appealable. Since the denial of the Commonwealth's petition effectively bars the prosecution's access to and use of the defendant's medical records concerning his possible treatment for gonorrhea, the order is sufficiently similar to a suppression order so as to require analysis under *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985). In *Commonwealth v. Conway*, 368 Pa.Su-

---

**6.** § 521.15 Confidentiality of reports and records, in pertinent part, reads as follows:

State and *local health authorities may not disclose reports of diseases, . . ., except where necessary to carry out the purposes of this act. . . .*

per. 488, 534 A.2d 541 (1987), we outlined the proper application of *Dugger*, stating:

> In *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985), our Supreme Court held that the Commonwealth may appeal a suppression order as long as the Commonwealth certifies in good faith that the suppression order substantially handicaps or terminates the prosecution. *Id.*, 506 Pa. at 545, 486 A.2d at 386. A prosecution is substantially handicapped whenever "the Commonwealth is denied the use of *all* their evidence," *Id.* The Commonwealth's certification is "not contestable," and "[i]t, in and of itself, precipitates and authorizes the appeal." Id.

*Conway*, 368 Pa.Superior Ct. at 490, 534 A.2d at 542 (applying "*Dugger* rule"); See also *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963).

Instantly, the Commonwealth asserts that the defendant's medical records are "essential" to proving the crime of rape. The Commonwealth submits that, due to the victim's tender years, she will be unable to testify concerning the issue of penetration, a necessary element of rape. The defendant's medical records are necessary to determine whether he had gonorrhea at the time of the rape. The Commonwealth states that expert testimony elicited at trial will establish that gonorrhea can not be transmitted without at least slight penetration. Consequently, the defendant's medical record, if it shows that the defendant was treated for gonorrhea proximate to the time of the rape, would not only tend to corroborate the victim's identification of the defendant as her attacker but also would tend to prove the issue of penetration. Likewise, if the medical records reveal that the defendant was not treated for gonorrhea, then the possible exculpatory explanation that the defendant was not the perpetrator is a question for the jury to determine. Consequently, we find that the Commonwealth has satisfied the certification requirement and has an absolute right to appeal to this court pursuant to *Dugger*.

■ The Commonwealth's questions on appeal can be summarized as follows: Whether a common pleas judge has

the authority to order a local health agency to turn over records which are essential to a criminal prosecution when the local agency claims the records are "absolutely" confidential pursuant to the Disease Prevention and Control Act, 35 Pa.S.A. § 521.15? In response, we answer that a common pleas judge has the power to order a local health agency to produce the medical records of an alleged sex offender when nondisclosure of those records would thwart the administration of justice. We find that the Disease Prevention and Control Act, specifically 35 Pa.S.A. § 521.-15, does not weave a cloak of absolute confidentiality around a defendant's medical records.

Broad discretionary powers have been vested in the judges of the courts of common pleas, and their decisions concerning the admissibility of evidence will not be disturbed on appeal absent a clear abuse of discretion. *Commonwealth v. Jermyn*, 516 Pa. 460, 470, 533 A.2d 74, 78 (1987); *Commonwealth v. Cargo*, 498 Pa. 5, 16–17, 444 A.2d 639, 644 (1982); *Commonwealth v. Lloyd*, 367 Pa.Super. 139, 144–45, 532 A.2d 828, 830 (1987). In order to be admissible, evidence must be competent and relevant. *Lloyd*, 367 Pa.Superior Ct. at 145, 532 A.2d at 830. Evidence is relevant if the evidence sought to be introduced tends to establish a material fact or make a fact more or less probable. *Jermyn*, 516 Pa. at 470, 538 A.2d at 79; *Lloyd*, 367 Pa. Superior Ct. at 145, 532 A.2d at 830.

The recent case of *Commonwealth v. Lloyd*, 532 A.2d 828, presents facts similar to the case now before us. In *Lloyd*, the victim, a six year old girl, was raped by the appellant. As a result of the rape, the victim contracted venereal disease. At trial, evidence of the appellant's venereal disease history was admitted into evidence. Upon review, we found "the introduction of the appellant's venereal disease history both relevant and probative to the occurrence of the crimes of sexual abuse for which he was charged." *Lloyd*, 367 Pa.Superior Ct. at 144, 532 A.2d at 831. Identically, we find that evidence of the instant defendant's venereal disease history is relevant and probative

since it will tend to make more or less probable the existence of material facts.[7]

Having determined that the evidence which the defendant and the Allegheny County Health Department claim to be absolutely privileged is relevant, we must now determine whether the confidentiality requirements of Disease Prevention and Control Act, 35 Pa.S.A. § 521.15, preclude disclosure of the defendant's medical history at trial.

■ Instantly, the trial court concluded that the Disease Prevention and Control Act precluded disclosure of the requested medical records of the defendant. While we agree with the lower court's statement, "It is unfortunate the legislature did not see fit to include local agencies in enactment of the disclosure statutes, supra, at 42 Pa.C.S.A. § 8721 et seq.", we nevertheless are convinced that the common pleas court is empowered, despite the confidentiality requirements of the Disease Prevention and Control Act, to order a local health agency to produce that portion of the defendant's medical records which are relevant to a substantive issue of the case, i.e. whether the defendant had gonorrhea at the time of the rape.

At the center of the instant controversy lies Section 521.15 of the Disease Prevention and Control Act, 35 Pa. S.A. § 521.1 *et seq.*, which reads as follows:

§ 521.15. Confidentiality of reports and records

State and *local health authorities may not disclose reports of diseases,* any records maintained as a result of any action taken in consequence of such reports, or any records maintained pursuant to this act or any regulations, to any person who is not a member of the department or of a local board or department of health, *except where necessary to carry out the purposes of this act.* State and local health authorities may permit the use of data contained in disease reports and other records, maintained pursuant to this act, or any regula-

7. We note that, despite the factual similarity between *Lloyd,* and the case *sub judice,* our decision in *Lloyd* is of little value presently. In *Lloyd,* the health department released the records without dispute, and the defendant failed to raise the issue now before us.

tion, for research purposes, subject to strict supervision by the health authorities to insure that the use of the reports and records is limited to the specific research purposes. (emphasis added)

Although not specifically stated in the Act, the purpose of the Disease Prevention and Control Act is to provide for the prevention and control of communicable and non-communicable diseases, including venereal disease, by fixing responsibility for the disease prevention and control, requiring reporting of disease, authorizing treatment of venereal diseases and providing for pre-marital and pre-natal disease testing. 35 Pa.S.A. § 521.1 (Historical Note). Unfortunately, legislative history of the Act and case law interpreting the Act is sparse and what little exists is inutile presently.[8]

However, we are not without elucidation concerning the purposes of the Act's confidentiality requirement. Clearly, the purpose of confidentiality is two-fold: first, the purpose of the privilege is *to protect the individual from disease* by creating "... a confidential atmosphere in which a patient will be encouraged to disclose all possible information bearing on his or her illness so that the physician may render effective treatment." *In re June 1979 Allegheny County Grand Jury*, 490 Pa. 143, 149, 415 A.2d 73, 77 (1980); and second, the purpose is *to protect society from disease* by encouraging "... those who are ill, diseased and plagued with any of the multitude of organisms which can inflict themselves upon humans to seek out treatment ..." confident that disclosure of the sensitive and private matters necessary for proper medical treatment will not be revealed to the public. *In re June 1979*, 490 Pa. at 154, 415 A.2d at 79, dissent of Justice Larsen.

**8.** The legislative history of the Disease Prevention and Control Act is lacking in substance. Most of the historical record consists of little more than a public reading of the act. Apparently, the discussion of the act occurred almost entirely behind "closed doors" or in committee, where there was little effort to produce committee reports or create a written record. Consequently, guidance as to legislative intent is nonexistent regarding the Disease Prevention and Control Act specifically.

The Allegheny County Health Department contends that release of the defendant's medical record would violate the codified provisions of the Disease Prevention and Control Act. Having reviewed the Act in its entirety, we find that disclosure of the defendant's medical records would not violate the provisions of the Act. As § 521.15 states, "... authorities may not disclose reports of diseases ... except where necessary to carry out the purposes of this act." It is difficult to envision a situation where disclosure of an individual's medical record by a local health agency would be more appropriate to "carry out the purposes of this act" than when the requested medical records are essential to the criminal prosecution of an alleged sex offender who may have transmitted a venereal disease to an unwilling victim.

This is especially evident upon notice of § 521.8 of the Act which, in pertinent part, reads as follows:

35 Pa.S.A. § 521.8. Venereal Disease

(a) Any person taken into custody and charged with any crime involving lewd conduct or a sex offense, or any person to whom the jurisdiction of a juvenile court attaches, may be examined for a venereal disease by a qualified physician appointed by the department or by the local board or department of health or the court having jurisdiction over the person so charged.

Clearly, the Act specifically grants to the court the power to order an alleged sex offender to submit to an examination for venereal disease. Thus, if the instant defendant had been arrested immediately after the rape and then tested for venereal disease, then the results thereof would be in the possession of the Commonwealth and subject to disclosure at trial.[9]

9. The record does not reveal whether the defendant was tested for gonorrhea after his arrest. Logic dictates that he was tested and his results were negative or nonconclusive, thus, making his prior test results necessary for effective prosecution.

However, testing the defendant for venereal disease upon arrest would have been of little evidentiary value since the alleged rape occurred as much as one and one-half months prior to his arrest. The

We find that defendant's and Allegheny County Health Department's arguments for non-disclosure incorrectly apply the provisions of the Act. Under their interpretation of the Act, the lower court could not order a local health agency to disclose the results of a defendant's pre-arrest test for venereal disease. However, under that same analysis, had the defendant merely foregone medical treatment until after his indictment, the court could order the defendant to undergo the very same tests and subject the results to scrutiny by the jury. We find that such a distinction would merely serve to create injustice.

The Allegheny County Health Department further contends that release of the defendant's medical record would violate purposes of the confidentiality requirement of the Disease Prevention and Control Act. The Health Department contends that society will be discouraged from seeking medical treatment for communicable and noncommunicable diseases by the possibility of public disclosure of medical records. Their forbearance allegedly would be created by the stigma associated with venereal disease. To conclude, however, that a reasonable person would forego necessary medical treatment simply because of the improbable possibility that the results of his examination for venereal disease may be disclosed in the context of his criminal prosecution on the charge of rape is absurd. In the words of Mr. Justice Cardozo, "The chance that now and then there may be found some timid soul who will take counsel of his fears and give way to their repressive power is too remote and shadowy to shape the course of justice." *Clark v. United States*, 289 U.S. 1, 16, 53 S.Ct. 465, 470, 77 L.Ed. 993, 1001 (1933).[10] To be certain, in these days of ever-in-

pertinent issue is whether the defendant had gonorrhea at the time of the alleged rape, not whether the defendant had the venereal disease at the time of his arrest.

10. In *Clark v. U.S.*, supra, the Supreme Court recognized the importance of preserving the secrecy of jury deliberations. Nonetheless, the Court also recognized that, under certain circumstances, limited disclosure of confidential information designed to serve the paramount needs of criminal law would not vitiate the interests served by confidentiality.

creasing concern about effective control and treatment of communicable diseases, especially Acquired Immune Deficiency Syndrome, the rules governing strict confidentiality should be cast aside only in situations where disclosure is of *paramount* necessity to insure justice prevails. Fortunately, under the present facts, we are certain that disclosure of the defendant's medical record will not only further the search for truth but also will further the purposes of the Disease Prevention and Control Act.

Additional support of our decision to compel disclosure is found in the provisions of the Child Protective Services Law, 11 Pa.S.A. § 2201 *et seq*, which, in pertinent part, reads as follows:

11 Pa.S.A. § 2222. Hearings and evidence

In addition to the rules of evidence provided under the Juvenile Act the following shall govern in child abuse proceedings in juvenile or family court:

.     .     .     .     .

(2) Except for privileged communications between a lawyer and his client and between a minister and his penitent, *any privilege of confidential communication between* husband and wife or between professional persons, including but not limited to *physicians,* psychologists, counselors, employees of hospitals, clinics, day care centers, and schools *and their patients* or clients, *shall not constitute grounds for excluding evidence at any proceeding regarding child abuse or the cause thereof.*

Though not directly applicable to the case at bar, 11 Pa.S.A. § 2222 is clearly demonstrative of the legislatures intent to eliminate the physician-patient privilege in cases involving the abuse of a minor.

Lending credence to the Commonwealth's request for an order compelling disclosure of the defendant's medical record is 42 Pa.C.S.A. § 8721 *et seq.*, supra. Pursuant to those code sections, the Commonwealth Court has the power to order the production of confidential medical reports

held by the State Department of Health.[11]  Clearly, the legislature intended to provide a means by which access to confidential documents, including medical reports, could be obtained.  See 42 Pa.C.S.A. § 8721 *et seq.*  Thus, if a defendant seeks treatment at a health clinic run by the State Department of Health, the Commonwealth Court is empowered to order disclosure of the medical records of the defendant.  42 Pa.C.S.A. § 8724.  However, the Commonwealth Court is not expressly authorized to order the production of confidential records held by a local health agency.  42 Pa.C.S.A. § 8723.

Again, we are presented with the fallacy inherent in the argument against production.  If an alleged sex offender seeks medical treatment at a health clinic run by the State Department of Health, then the Commonwealth Court could order production of the documents.  However, the defendant and the health department argue that an alleged sex offender's use of a local health agency for medical treatment precludes disclosure.  We will not allow a defendant to thwart his own prosecution by his random (or careful) decision to seek medical treatment at a local health agency rather than a state agency.[12]

■  Instantly, the Commonwealth Court, upon petition by the Commonwealth, ruled that it did not posses the jurisdiction necessary to order the Allegheny County Health Department to release the confidential medical records concerning possible treatment of the defendant.  The record shows that the Commonwealth failed to appeal the Com-

---

**11.** In *Brown v. Com., Dept. of Health,* 495 Pa. 456, 434 A.2d 1179 (1981), the Department of Health released the medical records of an alleged sex offender pursuant to an order issued by the Commonwealth Court.  As the Department of Health released the records prior to attacking the validity of the order, the provisions of 42 Pa.C.S.A. § 8721 *et seq.* have yet to be scrutinized by Pennsylvania Appellate Courts.

**12.** We further question the logic of creating a dichotomy between identical types of records held by a Commonwealth health agency and a local health agency, especially in light of the fact that the state funds a large portion of the local agency's budget and the State Secretary of Health can assume the operation of a local agency under certain circumstances.  16 Pa.S.A. §§ 12025, 12026.

monwealth Court's ruling on the petition. 42 Pa.C.S.A. § 723(a); Pa.R.A.P. 1101(a)(1). Instead, the Commonwealth now asks this Court to overturn the decision of the Commonwealth Court regarding the application of 42 Pa.C.S.A. § 8721 *et seq.* and to rule that the Commonwealth Court's power to grant access to confidential records held by Commonwealth agencies applies similarly to local agencies. Obviously, this Court may not review the Commonwealth Court's decision since the Pennsylvania Superior Court does not possess the appellate jurisdiction to decide such an issue. 42 Pa.C.S.A. § 742.

However, our abstention from comment on the Commonwealth Court's decision in no way affects our current analysis of the issue. The fact that the Legislature saw fit to authorize the Commonwealth Court to grant access to confidential documents held by Commonwealth agencies certainly supports our contention that the Legislature did not intend 35 Pa.S.A. § 521.15 to be an absolute bar to disclosure of confidential records. To say that the Commonwealth Court does not possess the requisite jurisdiction to order production does not mean that the court of common pleas lacks the authority to order production of confidential documents. Instantly, we are convinced that the court of common pleas has the power to compel local health agencies to release confidential medical records.

Under Pennsylvania law, judges of the Court of Common Pleas have broad discretionary powers to make such rules and orders of court as the interest of justice may require. See 42 Pa.C.S.A. § 323 (general powers of Pennsylvania courts); [13] 42 Pa.C.S.A. § 912 (powers of courts of common

---

**13.** 42 Pa.C.S.A. § 323. Powers

Every court shall have power to issue, under its judicial seal, every lawful writ and process necessary or suitable for the exercise of its jurisdiction and for the enforcement of any order which it may make and all legal and equitable powers required for or incidental to the exercise of its jurisdiction, and, except as otherwise prescribed by general rules, every court shall have power to make such rules and orders of court as the interest of justice or the business of court may require.

pleas);[14] 42 Pa.C.S.A. § 103 (principles of construction).[15] Even in the absence of express statutory authority to compel disclosure of evidence which the trial court deems necessary to facilitate the administration of justice, the Supreme Court has recognized the need for compulsory production of confidential information. As stated in *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974):

> We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of the courts that compulsory process be available for the production of evidence needed either by the prosecution of by the defense.

*U.S. v. Nixon*, 418 U.S. at 709, 94 S.Ct. at 3108, 41 L.Ed.2d at 1064.[16] See also, *Clark v. U.S., supra.*

**14.** 42 Pa.C.S.A. § 912. Powers of courts of common pleas
Every court of common pleas shall have power to issue, under its judicial seal, every lawful write and process to or to be served or enforced by system and related personnel as such courts have been heretofor authorized by law or usage to issue. Every judge of a court of common pleas shall have all the powers of a judge or district justice of the minor judiciary.

**15.** 42 Pa.C.S.A. § 103. Principles of construction
(a) Necessary powers conferred.—The provisions of this title shall be construed so as to vest in the unified judicial system and in the personnel of the system power to do all things that are reasonably necessary for the proper execution and administration of their functions within the scope of their respective jurisdiction.

**16.** In *U.S. v. Nixon*, the Supreme Court addressed the conflict between the President's assertion of a generalized privilege of confidentiality and the constitutional need for relevant evidence in criminal trials. The Court found that the President's executive communication privi-

Likewise, our Supreme Court, in *Matter of Pittsburgh Action Against Rape*, 494 Pa. 15, 24, 428 A.2d 126, 130 (1981), recognized that, under some circumstances, privilege must give way to the search for truth. "As the Supreme Court of the United States observed, 'disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice.'" 494 Pa. at 24, 428 A.2d at 130, quoting *Dennis v. United States*, 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966).

■ Significantly, review of Pennsylvania case law reveals that the physician-patient privilege does not apply in criminal proceedings. *Commonwealth v. Petrino*, 332 Pa. Super. 13, 32–33, 480 A.2d 1160, 1170 (1984), cert. denied 471 U.S. 1069, 105 S.Ct. 2149, 85 L.Ed.2d 505; *Commonwealth v. Edwards*, 318 Pa. 1, 178 A. 20 (1935).[17]

We note, however, that, in compelling disclosure of the defendant's confidential medical records, we must consider the defendant's right to privacy. In *In re June 1979*, 490 Pa. at 151, 415 A.2d at 77–78, our supreme court stated:

> Clearly, the privacy interest of the patients which is implicated under the instant set of facts is the interest in avoiding disclosure of personal matters. This privacy interest finds explicit protection in the Pennsylvania Constitution, Art. 1, § 1, which provides, in pertinent part: "All men ... have certain inherent and indefeasible rights, among which are those ... of acquiring, possessing, and protecting property and reputation."

lege must yield to the need for relevant evidence in a criminal prosecution.

**17.** These cases held that the statutory physician-patient privilege codified in 42 Pa.C.S.A. § 5929 and the previous version, 28 P.S. § 328, apply only in civil cases. 42 Pa.C.S.A. § 5929 reads as follows:
No physician shall be allowed, in any civil matter, to disclose any information which he acquired attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries.

See also, *Commonwealth v. Kyle,* 367 Pa.Super. 484, 533 A.2d 120, 127–128 (1987) (victim's psychologist-client communication absolutely privileged from defense under the facts); *In re B,* 482 Pa. 471, 394 A.2d 419, 424–426 (1978) (victim's psychotherapist-patient relationship is absolutely privileged from defense under the facts).

Instantly, both the defendant and the Allegheny County Health Department contend that the defendant's constitutional right to privacy would be violated by disclosure of his medical record. In its brief, the Health Departments states: "Allegheny County Health Department records in any sexually transmitted disease by its very nature includes confidential communications and not purely examinational or treatment records. These communications include sexual preference, sexual habits and names of sexual partners. It is hard to imagine any matters more worthy of the constitutional protection of privacy." (Appellee Brief, p. 11).

■ However, under the present facts, disclosure of the epidemiological portion of the defendant's health record is not necessary to promote the administration of justice. To eliminate any possibility of public disclosure of those private communications, the Allegheny County Health Department must submit the defendant's medical records to the trial court for an *in camera* review. The trial judge and the prosecution will then extract those sections of the record for disclosure which deal specifically with the alleged examination and treatment of the defendant for gonorrhea proximate to the date of the rape at issue. In this manner, only the results of any venereal disease test which the defendant may have taken subsequent to the alleged rape and prior to arrest will be disclosed at trial. Thus, those communications which the Health Department seeks to protect will not suffer exposure, and the defendant's right to privacy will not be violated. See *In re June 1979,* 490 Pa. at 149–150, 415 A.2d at 76–77 (privilege is limited to information directly related to patient's communications not examination).

Finally, we take note of North Carolina's learned approach to the issue now before us. Under North Carolina law, statutory privileges are qualified with the provision that "... the court, either at trial or prior thereto ... may compel such disclosure when, in his opinion, the same is necessary to a proper administration of justice." N.C.G.S. § 8–53. In an insightful opinion, *Sims v. Charlotte Liberty Mutual Insurance Co.*, 257 N.C. 32, 38, 125 S.E.2d 326, 331 (1962), Justice Moore observed: "It seems to us that the privilege statute, when strictly applied without the exercise of discretion on the part of the judge, is more often unjust than just.... Judges should not hesitate to require the disclosure where it appears to them to be necessary in order that the truth be know and justice be done." The case of *North Carolina v. Efird*, 309 N.C. 802, 309 S.E.2d 228 (1983) is, factually, almost identical to the case at bar. Therein, the judge, presiding in a rape trial of a minor-victim, compelled a county health agency to disclose the defendant's venereal disease treatment records in spite of his assertion of a statutory physician-patient privilege.

In sum, we conclude that disclosure of the defendant's medical records held by the Allegheny County Health Department will not violate the provisions of the Disease Prevention and Control Act. We further note that the statutory privilege granted under 35 Pa.S.A. § 521.15 must yield to the specific demand for information when correct disposition of a criminal proceeding is at stake. Our legislature certainly did not intend the privilege to be used by a defendant to shield inculpatory evidence from admission during his criminal prosecution. Thus, we reverse and remand for entry of an order in accordance with the provisions of this opinion.

HOFFMAN, J., concurs in the result.