**Hannis v. Sacred Heart Hospital**

154

C.P. of Lehigh County, no. 1996-C-0965.

*Neil E. Durkin,* for plaintiffs.
*Georgine A. Olexa,* for defendant Sacred Heart Hospital.
*Danielle S. Dinsmore,* for defendant Rios.
*Patricia A. Siemiontkowski, assistant city solicitor,* for potential parties City of Allentown and Allentown Bureau of Health.

GARDNER, *P.J.,* December 29, 2000—This matter is before the court on plaintiffs' motion to compel the Allentown Bureau of Health to produce the names of possible class members as defined in the court's order of June 20, 2000 presented September 6, 2000.

On September 5, 2000, potential parties City of Allentown and the Allentown Bureau of Health filed an answer in opposition.[1] The answer was styled, City of

---

1. On August 17, 2000, plaintiffs served counsel for each party with a copy of plaintiffs' motion to compel (See certificate of service at-

Allentown and Allentown Bureau of Health's answer in opposition to plaintiffs' motion to compel the production of records maintained by the Allentown Bureau of Health pursuant to the Disease Prevention Control Act of April 23, 1956.

Defendants Sacred Heart Hospital and Nestor Rios M.D. did not file any formal objection, nor take any position on plaintiffs' motion.

Oral argument was held before the undersigned September 6, 2000. For the reasons expressed below, we deny plaintiffs' motion to compel.

Plaintiffs Randy Hannis and Dawn Hannis, as parents and natural guardians of Devyn Hannis, a minor; Robert Kline and Gina Kline, as parents and natural guardians of Mason Kline, a minor; Trinette Kraftician, as parent and natural guardian of Briana Kraftician, a minor; Lisa Kozero, as parent and natural guardian of Joseph A. Kozero, a minor; and Valerie Santiago, as parent and natural guardian of Elijah Holmes Santiago, a minor, are class representatives who are prosecuting this class action lawsuit on behalf of all class members similarly situated.[2]

Plaintiffs brought this action in negligence and professional negligence against defendant Nestor Rios M.D., a pediatrician, and defendant Sacred Heart Hospital which employed him. Plaintiffs allege that Dr. Rios

tached to plaintiffs' motion). On September 6, 2000, plaintiffs formally presented and argued their motion before the undersigned in motion court. One day earlier, on September 5, 2000, the potential parties formally filed their answer to plaintiffs' motion.

2. By our order of June 20, 2000, we denied the request to designate as class representatives Luis Rodriguez and Elizabeth Rodriguez, as parents and natural guardians of Catalina Rodriguez, a minor; Harold Rockman; and Claudette Jenson. At this point, however, those plaintiffs remain in the case on their individual claims and as potential class members.

treated them, or had other contact with them, at a time when he knew or should have known, that he had infectious tuberculosis, without advising them of his condition or taking other precautions to protect them from exposure to the disease.

Plaintiffs allege that some of the numerous people who were exposed to Dr. Rios either contracted tuberculosis, or were required to undergo prophylactic antibiotic treatment as a result of their exposure. Plaintiffs also contend that the hospital permitted Dr. Rios to treat them, and failed to warn them or protect them, when it knew, or should have known, that Dr. Rios had infectious tuberculosis.

By order and accompanying opinion of the undersigned dated June 20, 2000, we granted plaintiffs' motion for class certification. In our order, we defined the potential class as:

"All persons, including minors, parents of minors, and adults, who: (1) between November 1, 1995 and February 21, 1996 at Sacred Heart Hospital or the Sacred Heart Hospital Clinic, both in Allentown, Pennsylvania, or elsewhere, came into direct contact with, were exposed to, or were in close proximity with, Nestor Rios M.D., at a time when Dr. Rios was infected with active tuberculosis; (2) were identified by the Allentown Health Bureau as having been in direct contact with, exposed to, or in close proximity with, Nestor Rios M.D. during that period; (3) were administered blood tests, tuberculin skin tests or x-rays as a result of these contacts with, or exposure to, Nestor Rios M.D.; and (4) either: (A) tested positive for tuberculosis and were medically treated for the condition; or (B) received prophylactic antibiotic medication therapy with the antibiotics Rifampin or Isoniazid, or other medication, and

who have suffered adverse side effects from the medication, including (i) nausea; (ii) vomiting; (iii) loss of appetite; (iv) irregular stool; (v) irregular urine; (vi) abdominal cramps; (vii) flu symptoms; (viii) fatigue; (ix) discoloration of the skin; (x) skin rashes; (xi) headaches; (xii) drowsiness; (xiii) dizziness; (xiv) disturbed vision; (xv) impaired hearing; (xvi) numbness; or (xvii) tingling."[3]

In the within motion, plaintiffs' contend that they need the names of the 277 individuals identified by the bureau who were exposed to Dr. Rios and received antibiotic treatments.[4] Plaintiffs assert that the bureau has refused to provide the names of these 277 persons previously identified. The bureau contends that the documents containing the names of the persons identified by the bureau as having been in direct contact with, exposed to, or in close proximity with, Dr. Rios between November 1, 1995 and February 21, 1996 are documents which are privileged, protected and confidential under the Disease Prevention and Control Act.[5]

Plaintiffs contend that the Allentown Bureau of Health is the only entity with the information from which the identities of the class members can be obtained. Plaintiffs further contend that without the information, not only will they be unable to identify and notify the per-

---

3. Pursuant to our June 20, 2000 order, the grant of class certification was conditional. The class certification order provided that after additional class discovery is completed, and before a decision on the merits, the class certification may be revoked, altered or amended by the court on its own motion, or on the motion of any party.

4. As noted in our opinion granting class certification, there were 220 children and 57 adults identified by the Allentown Bureau of Health as having received antibiotic treatment as a result of possibly being exposed to Dr. Rios.

5. Act of April 23, 1956, P.L. (1955) 1510, §15, as amended, 35 P.S. §521.15.

sons who fit the definition of the class set forth by the court, but also that these people may lose valuable rights to compensation as a result of the alleged negligence of the defendants. Moreover, plaintiffs assert that the court can fashion an appropriate order through which the confidentiality of the potential class members can be maintained, without denying them the right to be notified of their potential interest in this matter.

Potential parties the City of Allentown and Allentown Bureau of Health contend that they are precluded from disclosing the names of the 277 identified persons pursuant to section 521.15 of the Act. Section 521.15 provides in pertinent part:

*"Section 521.15. Confidentiality of reports and records*

"State and local health authorities may not disclose reports of diseases, any records maintained as a result of any action taken in consequence of such reports, or any other records maintained pursuant to this act or any regulations, to any person who is not a member of the department or of a local board or department of health, except where necessary to carry out the purposes of this Act." 35 P.S. §521.15.

The bureau further contends that assisting plaintiffs in the identification of class members does not further the purposes of the Act. The bureau asserts that plaintiffs are seeking to punish defendants for their alleged negligence in this incident. Plaintiffs contend that such punishment will deter other potential tort-feasors from acting negligently. The bureau argues that this is not the purpose of the Act.

The bureau relies on the decision of the Supreme Court of Pennsylvania in *Commonwealth v. Moore,* 526 Pa. 152, 584 A.2d 936 (1991), to support its conten-

tion that it cannot disclose the names of the 277 persons who may fit into the proposed class. For the following reasons, we agree.

*Commonwealth v. Moore* involved a request by the Commonwealth of Pennsylvania for medical records from the Allegheny County Health Department for use in a criminal prosecution. Applying section 521.15 of the Disease Prevention and Control Act, the Supreme Court of Pennsylvania ruled that the Act precluded disclosure of the records.

In *Moore,* defendant was charged with rape, statutory rape, indecent assault and corruption of minors. The Commonwealth of Pennsylvania had reason to believe that defendant had received treatment for gonorrhea at the Allegheny County Health Department. The victim had been diagnosed as having contracted gonorrhea. Therefore, the Commonwealth asserted that evidence that defendant had the same disease at the time of the incident would be material and relevant to the prosecution. 526 Pa. at 155, 584 A.2d at 938.

The Superior Court of Pennsylvania in *Moore* remanded the case to the trial court for an order directing the Allegheny County Health Department to produce medical records of the defendant, which the Superior Court determined were necessary for the administration of justice. 378 Pa. Super. 379, 381, 548 A.2d 1250, 1251 (1988).

In reversing the Superior Court, the Supreme Court of Pennsylvania concluded that the language of the Act would preclude disclosure of the records unless, in the language of the Act, disclosure was "necessary to carry out the purposes of this Act." The Supreme Court noted that "the act contains no separate, explicit statement of purpose beyond the title." 526 Pa. at 158, 584 A.2d at 939.

Nevertheless, the Supreme Court discerned that the purposes of the Act were "to assign primary responsibility for the prevention and control of diseases to local health departments, and to institute a system of mandatory reporting, examination, diagnosis, and treatment of communicable diseases." 526 Pa. at 158, 584 A.2d at 940.

The Supreme Court further stated, "We fail to understand how any of these purposes would be furthered by the disclosure of reports to assist in the prosecution of an alleged sex offender." The court also noted that "the general powers of the courts do not include the power to order disclosure of materials that the legislature has explicitly directed to be kept confidential." [6] *Id.*

In the case before this court, we find that plaintiffs' class action lawsuit does not further the purposes of the Disease Prevention and Control Act. We are not unmindful of the importance of protecting potential class members' rights in this tort action. Nevertheless, we must deny plaintiffs' request.

As noted, plaintiffs contend that the proposed class is a group of 227 individuals who received antibiotic treatment because they were identified by the Allentown Bureau of Health as possibly being exposed to Dr.

---

6. The legislature in 42 Pa.C.S. §8723 empowered the Commonwealth Court of Pennsylvania to enter an order providing access to confidential information in the possession of a Commonwealth agency if the petitioner is engaged in an ongoing investigation of criminal activity. The Allegheny County Health Department is not a Commonwealth agency. The Supreme Court of Pennsylvania reasoned in *Moore* that if the courts had such general power (to order disclosure of materials that the legislature has specifically directed to be kept confidential), then the specific grant of power to the Commonwealth Court in 42 Pa.C.S. §8723 to order disclosure of confidential materials in the possession of state agencies, would be entirely unnecessary. 526 Pa. at 158, 584 A.2d at 940.

Rios while he was infected with tuberculosis. According to plaintiffs, this class consists of 220 children and 57 adults who suffered side effects from the antibiotic treatment. Apparently, however, plaintiffs do not have the names or addresses of most of these individuals; but presumably, the bureau does.

Accordingly, plaintiffs seek an order compelling the Allentown Bureau of Health to provide them the names and addresses of these persons as possible class members, or in the alternative, to compel the bureau to assist plaintiffs in mailing notices to these persons. Plaintiffs contend that the interests which these persons have in this tort litigation outweighs the interest which they have in keeping their identities confidential pursuant to the protections the legislature has afforded them under the confidentiality provisions of the Act.

However, based in part upon the decision of the Superior Court of Pennsylvania in *V.B.T. v. Family Services of Western Pennsylvania,* 705 A.2d 1325 (Pa. Super. 1998), *appeal denied,* 556 Pa. 430, 728 A.2d 953 (1999), we find that the purposes of the Disease Prevention and Control Act as articulated by the Supreme Court in *Moore* outweigh any interest the plaintiffs may have in pursuing the within tort litigation.

In *V.B.T.,* the parents of a minor child filed a civil negligence action against Family Services of Western Pennsylvania and the foster parents of a foster child who had been placed with the foster parents by defendant Family Services. Plaintiffs sought damages for physical and sexual abuse which their young daughter allegedly suffered at the hands of the foster child who lived with the foster parents in plaintiffs' neighborhood. Plaintiffs asserted that Family Services of Western Pennsylvania was negligent in several respects including failing to train the foster parents, failing to treat the foster child,

and allowing a child with a history of abusive behavior to be placed in the neighborhood without warning the parents of children in the neighborhood.

Defendants in *V.B.T.* filed motions seeking protective orders. Defendants asserted that to answer plaintiffs' complaint and to respond to plaintiffs' discovery requests would require defendants to divulge statutorily protected confidential and privileged information. The statutory privileges involved included the sexual assault counselor privilege,[7] the domestic violence counselor/advocate privilege, created by the confidentiality provision of the Protection From Abuse Act,[8] confidentiality of records created by the Juvenile Act,[9] and the confidentiality of materials, reports and records under the Child Protective Services Law.[10]

The trial court in *V.B.T.* held that plaintiffs were entitled to discovery despite the protections afforded by the various statutory privileges. The trial court reasoned that plaintiffs' interest in pursuing tort litigation outweighed the interests created by the statutory privileges.

The Superior Court of Pennsylvania reversed the trial court. The Superior Court concluded that the sexual assault counselor privilege and the domestic violence counselor/advocate privilege are absolute privileges which are not overcome even by the constitutional rights of a criminal defendant, much less by any right of a private plaintiff to seek a tort recovery.

The Superior Court also concluded that the confidentiality provisions of the Juvenile Act and the Child Protective Services Law are qualified privileges. These privileges are qualified because those statutes, by their

---

7. 42 Pa.C.S. §5945.1.
8. 23 Pa.C.S. §6116.
9. 42 Pa.C.S. §6307.
10. 23 Pa.C.S. §§6301-6385.

own terms, create exceptions to the confidentiality of the records and materials. In that regard, the Superior Court determined that these qualified privileges cannot be overcome by a plaintiff's interests in prosecuting a negligence claim against the defendants.

In the case of each qualified privilege, the Superior Court concluded that the interests protected by the privilege outweigh those of a plaintiff seeking money damages in a negligence action. 705 A.2d at 1327. The court also concluded that the statutory exceptions to confidentiality in the Juvenile Act allowing access to "any other person . . . having a legitimate interest in the proceedings" (42 Pa.C.S. §6307(7)) does not extend to an unrelated civil plaintiff seeking information about the proceedings for purposes of prosecuting a personal injury lawsuit based on a separate incident. 705 A.2d at 1331.

As stated by the Superior Court:

"Certainly the trial court is correct in recognizing that these privileges, or indeed any privilege, operates as an impediment to the search for truth. For this reason, 'privileges are not lightly created nor expansively construed.' [Citations omitted.] However, those privileges which are established by constitution, common law or statute are 'designed to protect weighty and legitimate competing interests . . . . Thus where the legislature has considered the interests at stake and has granted protection to certain relationships or categories of information, the courts may not abrogate that protection on the basis of their own perception of public policy unless a clear basis for doing so exists in a statute, the common law, or constitutional principles.' *Commonwealth v. Moore,* 526 Pa. 152, 159, 584 A.2d 936, 940 (1991) ('[T]he general powers of the courts do not include the power to order disclosure of materials that

the legislature has explicitly directed to be kept confidential.') No such basis was found by the trial court or asserted by the plaintiffs in this case." 705 A.2d at 1335.

In the instant case, we conclude that the confidentiality provision of the Disease Prevention and Control Act is a qualified privilege. It is qualified because section 521.15 of the Act, by its own terms, creates an exception to the confidentiality of the reports and records concerning diseases "where necessary to carry out the purposes of this Act." [11]

Accordingly, as did the Superior Court in *V.B.T.,* we find that the legislature's clear mandate here was to only permit disclosure of materials which further the intent of the Disease Prevention and Control Act. As articulated by the Supreme Court of Pennsylvania, that purpose was to assign primary responsibility for the prevention and control of diseases to local health departments, and to institute a system of mandatory reporting, examination, diagnosis, and treatment of communicable diseases.

While the interests of plaintiffs, which are geared toward vindication of their injuries, are important, our legislature and Supreme Court have made the judgment that attempting to remedy the serious problem of communicable diseases in our society (by encouraging the reporting and treating of those diseases) is of superior importance.

Therefore, we find that the purpose advanced by plaintiffs does not further the purposes of the Act as defined by the Supreme Court. Accordingly, we deny plaintiffs motion to compel.

---

11. Another exception created by the language of section 521.15 of the Act, not applicable to the facts of the within case, authorizes disclosure of reports and records of diseases to "a member of the department or of a local board or department of health."

We also reject plaintiffs' alternative suggestion. Plaintiffs suggest that we direct the Allentown Bureau of Health to notify the prospective class members of their right to be included in the class action, by having the bureau forward to prospective class members a class notice to be prepared by plaintiffs. Under plaintiffs' suggestion, those prospective class members who wish to preserve their confidentiality need not respond. Those who prefer to be included in the class could waive their confidentiality and opt into the class by responding to the notice.

Despite plaintiffs' willingness to prepare all aspects of such notices, except the names and addresses which would be added by the bureau, and to reimburse the bureau for all expenses in connection with mailing such notices, the bureau is unwilling to do so. Because of the bureau's status as a "potential party" to this litigation, it is not clear that this court has sufficient jurisdiction over the bureau to permit this court to issue such a directive to the bureau. Moreover, even if we have such authority, such an order would be of doubtful validity under the cases cited above.

We realize that our ruling will make it more difficult for plaintiffs to identify and notify members of the prospective class. But our ruling does not make it impossible for them to do so. Plaintiffs can advertise for prospective class members, and perhaps use sources other than the bureau to obtain the information.

Accordingly, we will amend our class certification order of June 20, 2000 and extend the discovery deadline for the purpose of identifying all class members and subclasses from October 31, 2000 until February 28, 2001. In addition, we will postpone until March 20, 2001 the previously scheduled hearing to establish the

final definition of the class and any subclasses and to approve the class notices.

We will direct plaintiffs to provide the undersigned and all counsel with a proposed written class notice by March 5, 2001. Finally, we will require defendants to file a written acceptance of the proposed class notice, or file written objections thereto together with an alternate proposed written class notice, by March 15, 2001.

## ORDER

Now, December 29, 2000, upon consideration of plaintiffs' motion to compel the Allentown Bureau of Health to produce the names of possible class members as defined in the court's order of June 20, 2000, which motion was presented September 6, 2000; upon consideration of the City of Allentown and Allentown Bureau of Health's answer in opposition to plaintiffs' motion to compel the production of records maintained by the Allentown Bureau of Health pursuant to the Disease Prevention and Control Act of April 23, 1956, which answer was filed September 5, 2000; upon consideration of the briefs of the parties; after oral argument held September 6, 2000, and for the reasons expressed in the accompanying opinion,

It is ordered that plaintiffs' motion to compel the names of possible class members is denied.

It is further ordered that all class discovery for the purpose of identifying all class members and subclasses shall be completed by February 28, 2001.

It is further ordered, pursuant to Pa.R.C.P. 1711 and 1712, that on March 20, 2001 at 10 o'clock a.m. in courtroom 2, Lehigh County Courthouse, a hearing shall be held before the undersigned to designate the names

and addresses of all class members; to establish the final definition of the class and any subclasses; to specify the class members to be notified; to specify the type and content of the notice to be used; to establish the method of service of the notice upon the class; to fix the date by which class members must file a written election to be excluded from the class; to designate in the notice a person or persons to answer inquiries from, furnish information to, or receive comments from, members or potential members of the class with respect to notice; and to address such other procedural matters as may advance the efficient disposition of the within class action.

It is further ordered that on or before March 5, 2001 plaintiffs shall provide all counsel and the undersigned with a proposed written class notice pursuant to Pa.R.C.P. 1711, 1712 and this order for approval by the court.

It is further ordered, pursuant to Pa.R.C.P. 1712(c), that on or before March 15, 2001 defendants shall file a written acceptance of the proposed class notice, or file written objections thereto together with an alternate proposed written class notice.